THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REMBERT HIRSCH, Defendant-Appellant.

First District (3rd Division)   No. 1—99—2378

———

Opinion filed March 8, 2000.

Allan A. Ackerman, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William L. Toffenetti, and Vincent J. Pagano, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Somebody once said: "When the play is cast in hell you cannot expect the actors to be angels." This case makes that point. It concerns

a business debt, a million dollar life insurance policy, a luckless gambler, and a murder-for-hire scheme gone awry.

The issue we deal with is the guilty plea of the accused assailant, Rembert Hirsch (Hirsch). He contends the trial court erred in denying without a hearing his motion to vacate his plea of guilty to aggravated battery. We affirm the trial court.

### FACTS

Herbert Betancourt (Betancourt) owed a considerable amount of money to his business associate, Kenneth Blum (Blum). Under an agreement with Betancourt, Blum purchased a $1 million policy on Betancourt's life.

Blum soon met Hirsch at a party and learned Hirsch had mounting gambling debts. Blum offered to pay Hirsch's debts if Hirsch would kill Betancourt. Overcoming his initial reluctance, Hirsch finally accepted Blum's overtures.

On the evening of January 14, 1995, Betancourt was walking to a fictitious business meeting arranged by Blum at a north-side restaurant when Hirsch struck him from behind with a tire iron. Betancourt stumbled toward the street, and Hirsch continued his attack by landing crushing blows to Betancourt's face and head. A witness drove by Hirsch and Betancourt, honking her car horn and shining her headlights on the attack. During the attack, Hirsch's mask came off, and Betancourt and the witness saw his face. Hirsch fled. Betancourt received 40 to 50 stitches as a result of the attack.

The next day, January 15, Betancourt tape-recorded a conversation with Blum in which Blum confided Hirsch committed the attack. On February 16, 1995, Hirsch surrendered to the police. He was charged with attempted first-degree murder, aggravated battery, and armed violence.

On March 5, 1999, Hirsch, who was on bond, appeared in court for what his attorney, Steven Fritzshall (Fritzshall), understood was a status hearing on a possible guilty plea. Assistant State's Attorney Kevin Hughes (Hughes) disagreed, insisting the trial court had scheduled a sentencing hearing. The court said, "Based on those representations [about Hirsch's cooperation in Blum's case] what I said was you either want to set this for trial or have a plea of guilty. And that was my position." Hughes said Hirsch had agreed to plead guilty to three counts of aggravated battery. Hughes added, "The State will be making a [sentencing] recommendation. The defense will be making a recommendation—." Fritzshall balked: "That's the little glitch that I wanted to talk to [opposing] counsel about."

The court passed Hirsch's case. Fritzshall and Hughes returned with a written plea agreement, signed by Hirsch:

"IT IS AGREED that Rembert Hirsch will testify in all matters in which he is subpoenaed to do so regarding the Solicitation Murder For Hire [*sic*] of Herbert Betancourt. It is further agreed that Rembert Hirsch will plead guilty to [three counts of aggravated battery].

That at the sentencing hearing of Rembert Hirsch the State will introduce any prior convictions of Rembert Hirsch. The State will recommend that Rembert Hirsch receive a five year sentence to be served in the Illinois Department of Corrections. This sentence recommendation is based upon Rembert Hirsch's truthful testimony and is not, by law, binding upon the [trial judge.]

The State will ask [the trial judge] to consider what risks to his personal safety Rembert Hirsch has placed himself in by giving his truthful testimony. The State and Rembert Hirsch agree that Rembert Hirsch may receive up to a thirty year sentence from [the trial judge] under [the attempted first-degree murder and armed violence counts]. [The trial judge] has sole discretion in determining what sentence Rembert Hirsch will receive. Rembert Hirsch also understands that if he fails to testify truthfully he will be charged and prosecuted for Perjury."

The trial court read this agreement into the record and asked Hirsch if he had signed it. Hirsch said he did.

The court proceeded with its plea colloquy. See 134 Ill. 2d R. 402(a). The court informed Hirsch he could receive a sentence of five years' imprisonment for each of the aggravated battery counts, and Hirsch said he understood his potential sentence. Hirsch signed a jury waiver after the court reviewed the constitutional rights he would relinquish with his guilty plea. The court asked Hirsch, "[I]s anybody forcing you in any way in order to get you to plead guilty?" Hirsch answered, "No." The court asked Hirsch, "Has anybody threatened you in any way?" Hirsch answered, "No." The court asked Hirsch if, other than the agreement to drop the attempted murder and armed violence charges, "[H]ave any other promises been made to you in order to get you to plead guilty?" Hirsch answered, "No, Your Honor." Hirsch agreed his guilty plea was free and voluntary.

The court accepted Hirsch's guilty plea to the three aggravated battery counts and granted the prosecution's motion to "nolle pros" the attempted first-degree murder and armed violence charges. The court sentenced him to four years' imprisonment.

Hirsch obtained a new attorney, and, on March 30, 1999, filed a "MOTION TO VACATE GUILTY PLEA AND SENTENCE." In this motion, Hirsch contended Fritzshall told him he would receive probation or work release in return for his grand jury testimony against Blum. Hirsch further contended he learned on March 5, 1999, "for the

first time," the prosecution would recommend a substantial prison term, not probation or work release, in return for his guilty plea. Hirsch added his attorney did not know sentencing would occur on March 5. In this motion, Hirsch never asked to proceed to trial.

On May 14, 1999, Hirsch filed a supplement to his motion to vacate. This supplement provided background on Hirsch's attack on Betancourt and included Hirsch's affidavit. In his affidavit, Hirsch said Fritzshall assured him he would receive probation or work release in return for his grand jury testimony against Blum. Hirsch said he then met with Hughes. According to Hirsch, Hughes said:

> "[T]he agreement would be that in exchange for my truthful testimony, all charges would be dropped other than aggravated battery and that he *might* recommend a jail sentence, but I also *might* receive probation. I quickly took Mr. Fritzshall aside and reminded him that that was not the agreement as Fritzshall had described it to me. Fritzshall said 'this is all we will need to get a two year probation sentence because you have no background to speak of and you are cooperating with the State's Attorney—everything will be fine.' " (Emphasis added.)

Hirsch said it was after that statement by Hughes that he began talking about his role in the attack on Betancourt. In subsequent conversations with Fritzshall, Hirsch said he was assured, " 'don't worry about it, probation is a sure thing.' "

Hirsch said he appeared for court on March 5, 1999, and learned sentencing would occur that day. According to Hirsch, Fritzshall said to him:

> "[I]t might be necessary to offer the court some weekends in jail but that way I could still maintain my business career. I asked if he was worried and he said no and then I asked what was the problem with the deal with the State's Attorney and he said there was no problem—but weekends in jail should be offered as a sentencing option."

Hirsch said Fritzshall spoke with the Assistant State's Attorney and returned to speak with Hirsch:

> "Fritzshall informed me that the Assistant State's Attorney had changed the agreement and he will be asking the judge to give me five-years in prison. *** I asked how the agreement could be changed after I completed my part of it—I truthfully testified before the Cook County Grand Jury, I gave a complete truthful statement to the Cook County Prosecutor based on my probation agreement— how could the agreement now be changed. Mr. Fritzshall responded 'he can't do anything about Kevin going back on his deal because there was *nothing in writing* and the judge wants progress on this case today.' " (Emphasis in original.)

Hirsch said Fritzshall then produced the written plea agreement "and advised that I should sign the 'new agreement' because otherwise we will be on trial and the State will use the statements I gave them against me and Kenneth Blum will be testifying against me. *** I became very upset and Mr. Fritzshall told me 'keep it together! We still have a chance at two-years probation, or weekends in jail, but you must stay composed.' Thus I signed the agreement and pled guilty."

Hirsch said Fritzshall did not mention the earlier agreement during sentencing. This supplement to Hirsch's motion to vacate his guilty plea did not ask for a trial. It confined its request to obtaining a "substantially reduced sentence."

On June 3, 1999, the trial court summarily denied Hirsch's motion to vacate. This appeal followed.

## DECISION

Hirsch contends the trial court erred in denying his motion to vacate his guilty plea.

■ A defendant has no absolute right to withdraw a guilty plea and bears the burden of demonstrating to the trial court the necessity of withdrawing his plea. *People v. Chapple*, 291 Ill. App. 3d 574, 578-79, 683 N.E.2d 1001 (1997). The denial of the defendant's motion to withdraw his guilty plea lies within the trial court's sound discretion. *People v. Wilson*, 295 Ill. App. 3d 228, 234, 692 N.E.2d 422 (1998). We will not disturb that decision absent an abuse of discretion. *People v. Halawa*, 291 Ill. App. 3d 373, 376, 683 N.E.2d 926 (1997).

The serious issues Hirsch presents on appeal are couched in terms of purported flaws in Fritzshall's representation. Hirsch contends Fritzshall misadvised and misled him about the admissibility of evidence at trial and misrepresented the consequences of a guilty plea. Hirsch also contends Fritzshall failed to assert Hirsch's reasonable understanding of his fulfilled plea agreement, which the prosecution allegedly breached. Hirsch finally contends Fritzshall failed to prepare adequately for the sentencing hearing and labored under a potential conflict of interest.

The United States Supreme Court has held "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370 (1985). Illinois courts agree. See *People v. Jones*, 144 Ill. 2d 242, 254, 579 N.E.2d 829 (1991); *People v. Huante*, 143 Ill. 2d 61, 67, 571 N.E.2d 736 (1991); *People v. Brown*, 309 Ill. App. 3d 599, 604 (1999).

■ In this context, the first, or performance, prong is the standard inquiry into attorney competence. *Hill*, 474 U.S. at 58, 88 L. Ed. 2d at

210, 106 S. Ct. at 370. The second, or prejudice prong, focuses on whether defense counsel's inadequate performance affected the outcome of the plea-bargaining process. *Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370. The defendant must establish both attorney incompetence and prejudice in order to prevail on a *Strickland* claim. *People v. Pugh*, 157 Ill. 2d 1, 14, 623 N.E.2d 255 (1993).

We cannot ignore the trial court's meticulous Rule 402 admonitions or Hirsch's own sworn statement to the judge that he pleaded guilty freely and voluntarily. *People v. Artale*, 244 Ill. App. 3d 469, 475, 612 N.E.2d 910 (1993). "The trial court was entitled to evaluate defendant's current contentions in light of the contradictory record and conclude defendant would have pleaded guilty anyway because defendant believed it was in his best interests." *People v. Bien*, 277 Ill. App. 3d 744, 752, 661 N.E.2d 511 (1996).

■ It is apparent Hirsch asked to withdraw his guilty plea because he is in search of a more favorable sentence, "a substantially reduced sentence." But "[a] defendant should not be allowed to withdraw his plea when the real basis for his withdrawal is that he is dissatisfied with the length of his sentence." *People v. Cunningham*, 286 Ill. App. 3d 346, 350, 676 N.E.2d 998 (1997). At no time has Hirsch asked for a trial. Nor has he said he has a defense to the attempted first-degree murder charge.

■ Even if we were to examine Fritzshall's performance and find it substandard, " '[a] guilty plea made in reliance on the incorrect advice of counsel as to the anticipated term of a sentence is still a voluntary plea.' " *People v. Radunz*, 180 Ill. App. 3d 734, 742, 536 N.E.2d 189 (1989), quoting *People v. Robinson*, 157 Ill. App. 3d 622, 629, 510 N.E.2d 1050 (1987).

In this direct appeal, we are not required to take as true the assertions in Hirsch's affidavit. If we did, serious questions about his lawyer's competency would have been raised. The lawyer purportedly told Hirsch his statements to the prosecutor and to the grand jury could be used against him if he were to go to trial. That would be wrong advice. See 134 Ill. 2d R. 402(f); *People v. Friedman*, 79 Ill. 2d 341, 403 N.E.2d 229 (1980). We also would question the judgment of a lawyer allowing his client to make incriminating statements without a specific, written agreement with the prosecution.

■ We see no need to delve into the first prong of the *Strickland*

test. It is the prejudice barrier that Hirsch cannot overcome. He received what he bargained for. He never denied guilt and, in fact, his new lawyer admitted guilt on his behalf during posttrial proceedings. This appeal really is a dressed-up motion to reduce sentence. The reality is that is all Hirsch asked for in the trial court and that is all he asks for in this court.

After reviewing the record, we see no good reason to lower the sentence. Considering the sentence Hirsch could have received on the attempted first-degree murder charge, we believe justice was done in this case.

■ In addition to his ineffective assistance contentions, Hirsch claims the prosecution breached an oral plea agreement which guaranteed him probation.

When a guilty plea and its attendant surrender of constitutional rights rest on a prosecution promise, such a promise must be fulfilled. See *People v. Starks*, 106. Ill. 2d 441, 452, 478 N.E.2d 350 (1985); *People v. Gott*, 43 Ill. App. 3d 137, 141, 356 N.E.2d 1102 (1976). If the prosecution breaches its promise, the defendant can withdraw his guilty plea and proceed to trial. *People v. Thomas*, 246 Ill. App. 3d 708, 718, 616 N.E.2d 695 (1993).

Here, the only evidence of a prosecution promise comes from Hirsch's affidavit in which he said Hughes "*might* recommend a jail sentence, but I also *might* receive probation." (Emphasis added.) This comment does not constitute a promise to recommend probation. If anything, it is a promise to do exactly what the prosecution did at sentencing—recommend a jail sentence. Additionally, in his responses to the court's Rule 402 questions, Hirsch said he was not forced, threatened, or induced by promises, outside the March 5, 1999, written plea agreement, to plead guilty. Again, we cannot ignore Hirsch's own words.

Hirsch also contends Fritzshall was laboring under a conflict of interest because the lawyer was involved in a civil proceeding related to the murder solicitation. We lack a sufficiently developed record to investigate this issue.

CONCLUSION

The trial court did not abuse its discretion in denying Hirsch's motion to vacate his guilty plea. We affirm.

Affirmed.

CAHILL, P.J., and CERDA, J., concur.