THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CECIL HOLLIDAY, Defendant-Appellant.

Fifth District    No. 5—97—0976

Opinion filed June 8, 2000.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William R. Haine, State's Attorney, of Edwardsville (Stephen E. Norris, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPKINS delivered the opinion of the court:

Defendant appeals from the trial court's summary dismissal of his two postconviction petitions without an evidentiary hearing within the first 90 days after they were filed. See 725 ILCS 5/122—2.1 (West 1998). These cases were consolidated on appeal. At issue is whether defendant was entitled to an evidentiary hearing on either of these petitions. We find that defendant was entitled to an evidentiary hearing on his first postconviction petition. Accordingly, we reverse and remand for an evidentiary hearing.

## STANDARD OF REVIEW

■ On appeal from a summary dismissal of a postconviction petition, the standard of review is plenary. See *People v. Coleman*, 183 Ill. 2d 366, 388 (1998). In *Coleman*, the supreme court explained this standard of review as follows:

> "The question raised in an appeal from an order dismissing a post[ ]conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the [Post-Conviction Hearing] Act [(725 ILCS 5/122—1 *et seq.* (West 1998))]. Due to the elimination of all factual issues at the dismissal stage of a post[ ]conviction proceeding, the question is, essentially, a legal one, which requires the reviewing court to make its own independent assessment of the allegations. Thus, a court of review should be free to substitute its own judgment for that of the circuit court in order to formulate the legally correct answer. *** A court of review has the same capability as does the circuit court in the first instance to look at the allegations and construe them liberally in favor of the petitioner and as set forth in light of the trial record." *Coleman*, 183 Ill. 2d at 388.

■ A postconviction petition is a collateral attack on the judgment of conviction. See *People v. Piper*, 272 Ill. App. 3d 843, 845 (1995). "The purpose of the proceeding is to resolve allegations that constitutional violations occurred at trial when those allegations were not, or could not have been, adjudicated previously." *Piper*, 272 Ill. App. 3d at 845. In the first stage, the defendant files a petition and the circuit court independently determines whether the petition is frivolous or patently without merit, without input from either side.

■ To survive dismissal, a petition need only present the gist of a

constitutional claim. See *People v. Porter*, 122 Ill. 2d 64, 74 (1988). This is a low threshold; a defendant need only present a modest amount of detail and need not make legal arguments or cite to legal authority. See *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); *Porter*, 122 Ill. 2d at 74. The petition must be supported by "affidavits, records, or other evidence supporting its allegations," or the petition "shall state why the same are not attached." 725 ILCS 5/122—2 (West 1998). If the circuit court does not dismiss the petition pursuant to section 122—2.1, the petition is docketed for further consideration and, if the defendant is indigent, the court is required to appoint counsel. See *Gaultney*, 174 Ill. 2d at 418.

■ Thus, our review is essentially the same as that required of the trial court. We are to review the allegations of the postconviction petition, construing them liberally, with our focus on whether the petition states the gist of a meritorious claim of constitutional deprivation. A postconviction petitioner is not entitled to an evidentiary hearing as a matter of right, but the supreme court has repeatedly stressed that a hearing is required whenever the petitioner makes a substantial showing of a violation of constitutional rights. See *Coleman*, 183 Ill. 2d at 381. "To accomplish this, the allegations in the petition must be supported by the record in the case or by its accompanying affidavits." *Coleman*, 183 Ill. 2d at 381. When assessing the sufficiency of the allegations, the trial court and the court of review are to consider the petition in light of the entire record. See *People v. Vunetich*, 185 Ill. App. 3d 415, 419 (1989).

## FACTS

■ Initially, we note that prior to entering this opinion, we granted the State's motion to strike portions of defendant's brief that refer to the grand jury testimony in this case, and we denied defendant's motion to supplement the record with the transcript of the grand jury proceedings. After reviewing the record, we vacate those orders and hereby grant defendant's motion to supplement the record with the transcripts of the grand jury proceedings. The record is clear that defendant, his attorneys, the State, and the court all refer to those transcripts several times on the record. Moreover, one of the issues defendant raises in his postconviction petitions concerns certain grand jury testimony that was later recanted. Defendant's contention that the recanted testimony entitles him to vacate his *nolo contendere* guilty plea is sufficient to entitle defendant to supplement the record with the transcripts.

Defendant was arrested on June 25, 1996, for sexual assault against Barbara Young. On June 27, 1996, a criminal indictment was

filed against defendant, charging him with two counts of criminal sexual assault and one count of unlawful restraint. On July 2, 1996, defendant's court-appointed attorney filed a speedy trial demand. On July 12, 1996, the trial court ordered the State to provide defendant's attorney with a transcript of the grand jury proceeding that was held on June 27, 1996.

On July 12, 1996, the State filed a motion for discovery, requesting defendant to provide samples of his blood, hair, and saliva for testing purposes. On September 3, 1996, the State's motion was called for hearing. The State acknowledged that defendant announced ready for the trial scheduled for September 9, 1996, but the State argued that it was entitled to a continuance to obtain DNA testing results. On September 9, 1996, the 70th day since defendant's incarceration, the trial court granted the State's motion for discovery.

On October 10, 1996, another grand jury proceeding was held, and an amended indictment was filed on the same date. The amended indictment charged defendant with one count of aggravated criminal sexual abuse, which replaced one of the counts of aggravated criminal sexual assault.

On October 22, 1996, defendant's case was scheduled for trial, but the State moved for another continuance for the reason that the State had failed to locate or subpoena two material witnesses, Barbara Young and Tamara McKinney. Young was the complaining witness, and McKinney was present during the assault and testified about the assault in the first grand jury proceeding. The court found that Young and McKinney were material witnesses and that the State exercised due diligence to locate Young but had not exercised due diligence to locate McKinney. Under section 103—5(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(c) (West 1998)), the court granted the State a 42-day continuance, until December 2, 1996, which the trial court calculated to be the 160th day of defendant's incarceration since his arrest. The trial court warned the State that the case would go to trial on December 2 whether or not the State's witnesses were available.

On December 2, 1996, the trial court entered the following order:

> "*Pursuant to court's request* defendant on his motion continues the trial setting from Dec. 2, 1996 to Dec. 3, 1996. One day delay attributable to defendant Mr. Holliday. Mot[ion] is without prejudice to [defendant's] *** Mot[ion] for discharge pursuant to 725 ILCS 5/103—5(c)." (Emphasis added.)

Also on December 2, 1996, defendant filed a petition for discharge, which alleged, *inter alia*, that defendant had "spent 161 continuous days in custody with no delay of any type attributable" to defendant.

Defendant alleged that the State was granted a continuance in order to conduct DNA testing but that the State "in fact chose not to do any DNA testing on Mr. Holliday's blood." Defendant argued that the trial court abused its discretion in finding that the State used due diligence in its attempts to locate Young and in continuing the case for 42 days on that basis. There is no transcript of any hearing conducted on defendant's petition for discharge, nor is there an order granting or denying the motion.

■ The next day, December 3, 1996, defendant entered a negotiated guilty plea in which he did not admit guilt but stipulated that the State could prove the charge of aggravated criminal sexual abuse. This type of plea is commonly referred to as a *nolo contendere* plea or an *Alford* plea. See *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). Under the terms of the negotiated plea, the State agreed to dismiss the charges of aggravated criminal sexual assault and unlawful restraint in exchange for defendant's stipulation that the State could prove the charge of aggravated criminal sexual abuse, a Class 2 felony. The trial court admonished defendant about his rights, and the State gave a factual basis for the plea. The trial court accepted defendant's plea of guilty and dismissed the remaining counts.

The record does not contain any subpoenas for either Young or McKinney for the December trial setting, and there is no indication of record that either Young or McKinney was present when defendant entered his guilty plea.

On December 17, 1996, the trial court conducted a hearing on defendant's *pro se* motion seeking to have his court-appointed attorneys removed from his case. At that hearing, defendant told the court that his attorneys were in possession of a videotape that would show "the alleged perjury of the victim" and that defendant would not have pled guilty if he had known what was on the videotape.

One of defendant's attorneys responded that the tape was "a rather brief tape," showing McKinney and Young "and another woman *** all naked together." Defendant's attorney stated that he thought the tape also showed "a naked male." Defendant's attorney argued that he explained to defendant "exactly what was on the tape" and the evidentiary problems with the tape, that he thought it unlikely that the videotape would actually be introduced into evidence, but that he thought he might have been allowed to question Young about her prior sexual relationship with McKinney.

Additionally, defendant's *pro se* motion also alleged that defendant's 120 days for a speedy trial elapsed although his lawyer did not move for dismissal, that the judge "granted a 42[-]day extension due

to the fact the State wasn't ready," and that on "the 43rd day [defendant] was taken to court and [was] ready for trial[ ] but [was] misled by [his] lawyer to plead guilty."

Defendant's attorney responded to defendant's speedy trial allegations by telling the court: "I think I did file a motion with respect to that, which we did not argue. And I explained to him that I thought that motion would not succeed."

The trial court commented that it was "aware of the tape" and that the tape "would never have come in under the rape shield statute." The judge stated that he thought "that some questions may have been allowed, under a narrow exception." As to defendant's speedy trial allegations, the judge stated that it had extended the speedy trial deadline and that defendant's attorney "then filed a motion to protect the speedy trial demand, alleging that the Court was wrong in allowing the forty-two day continuance, which does take care of that matter." The trial court denied defendant's request for a different attorney.

Between the hearing on defendant's motion for a new attorney and his sentencing hearing, defendant filed four *pro se* letters: two of the letters were addressed to the Madison County circuit clerk and asked for a copy of the "videotape/transcript" and copies of all transcripts and any motions filed in his case; one of the letters alleged that defendant's attorneys coerced him into entering the guilty plea; and the final letter is dated February 11, 1997, and is simply addressed "Dear Sirs."

The letter addressed "Dear Sirs" is eight pages in length, is notarized, consists of a detailed list of the "facts, events[,] and decisions" in defendant's case, and shows that copies of the letter were sent to several parties, including the presiding judge, defendant's public defenders, and the Madison County circuit clerk. Two statements in the letter are particularly relevant to this appeal: that defendant, Young, and McKinney had "consenting sexual intercourse" and that on August 8, 1996, McKinney recanted her grand jury testimony and produced a videotape that established a prior sexual relationship between Young and McKinney.

The remainder of the "Dear Sirs" letter is as follows:

"12-02-96: Public defenders allow the State 24 more hours to produce the plaintiff. Judge Romani states 'If you object to this motion, I will not allow any of your motions during the trial hearing' (per Tyler Bateman) [defendant's attorney]

12-02-96 ***: Tyler Bateman brings motion to dismiss charges to me but allegedly Barbara [Young] shows up at 2:00 pm at the *** courthouse. Tyler Bateman tells me I will be going to court the next day on 12-03-96.

12-03[-]96: Cecil goes to trial and is threatened and coer[c]ed into a plea of nolo contendere."

On February 25, 1997, the trial court conducted defendant's sentencing hearing, at which time defendant's attorney argued that he was "sure" one of the reasons defendant entered an *Alford* plea instead of going to trial was because the jurors might have misused his prior criminal record "in terms of guilt and innocence." The trial court sentenced defendant to eight years' imprisonment with credit for time previously spent in custody, which was 246 days as of the date of the sentencing hearing, with a recommendation that defendant be placed in a minimum security facility. The court appointed a special public defender to replace defendant's trial attorneys, due to defendant's allegations of ineffective assistance of trial counsel as a grounds for withdrawing his guilty plea, and gave defendant's new attorney 30 days to file an amended motion to withdraw guilty plea.

## DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

On March 21, 1997, defendant filed a *pro se* handwritten motion to vacate his guilty plea. Three days later, defendant file a *pro se* typewritten motion to withdraw guilty plea and vacate sentence, alleging, *inter alia*, that his attorneys coerced defendant to plead guilty; that they misled defendant on his legal rights; that as a result of the coercion and misleading, defendant was unable to make an intelligent decision about pleading guilty; and that "but for" the coercion and misleading, defendant "would not have pleaded guilty, because he is not guilty."

On March 27, 1997, defendant's latest appointed attorney filed a motion to withdraw from representing defendant on the grounds that he was appointed to represent Tamara McKinney.

On March 31, 1997, defendant filed a *pro se* letter, which was addressed to Chief Judge Nicholas J. Byron. The letter alleged that defendant was seeking to withdraw his guilty plea due to the ineffective assistance of his trial counsel. Evidently, several documents were attached to the letter as exhibits. Labeled "EX-4" is a typewritten statement that is signed by Tamara McKinney. The following are the pertinent portions of that statement:

"My name is Tamara McKinney. *** When Cecil and I were arrested, I was told the charges were Criminal Sexual Assault and *** kidnaping ***. I believed these charges were in effect at that time. I also know that neither Cecil nor I was guilty of these charges. *** Officer Gordon *** told me that I might *** be a victim, but that I was also guilty and the only way I could help myself was to give him a statement. It was clear to me that if I told Officer Gordon what he wanted to hear, the charges against me

would be dropped and I then agreed to give him a statement. At that time, I told Officer Gordon that the sex acts had all been consensual and that Barbara Young had been a willing participant. He did not want to hear this and I then told him what I knew he wanted to hear. *** I knew Officer Gordon wanted a statement making Cecil guilty and me a victim. I was made to believe the charges against me would be dropped depending on what I said. Barbara Young and I have had a long term sexual relationship. *** [W]e have had many sexual encounters, sometimes just her and I and other times with just one man. *** I know that Barbara is willing to give sex to anyone who will provide her with crack cocaine. This was part of her plan the night she came to our home ***. *** Cecil, Barbara and I knew we were going to engage in sex and Barbara was a willing participant. *** I believe the police report and charges are only a result of Barbara's obsession with me and the fact that I am or was available to Cecil and did not leave with her. She was mad at both of us when she left. After I gave the statement to Mike Gordon, I was then told the charges against me would not be dismissed until and unless I testified to the statement I had given Mike Gordon. This was to be before a grand jury the following day. I was kept in custody and was taken to the Madison County courthouse the next day by Officer Gordon and did testify before the Grand Jury. I knew my testimony had to be the same as the statement I had given to Officer Gordon and I was still in custody. After testifying I was returned to the Alton Police Department and then released."

The statement was dated August 8, 1996, was signed on each page by Tamara McKinney, and was notarized.

On April 7, 1997, defendant filed a motion to withdraw guilty plea and vacate sentence, in which he alleged that McKinney's statement proved that Young's grand jury testimony was false and that defendant's constitutional and civil rights were violated.

Also on April 7, 1997, defendant filed a motion for an attorney, since his last attorney, Stephen Evans, had moved to withdraw. On April 22, 1997, the court appointed another attorney to represent defendant and set defendant's motion to withdraw guilty plea for hearing on May 29, 1997.

On May 29, 1997, defendant's newest attorney filed a certificate of compliance with Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)), alleging in part that he "examined the trial court file and report of proceedings in the above styled cause." The record indicates that the transcript of defendant's guilty plea hearing was not transcribed by the court reporter until May 30, 1997, the day after the certificate of compliance was filed. The transcript of the hearing on defendant's

guilty plea was not filed in the court file until June 17, 1997. The docket sheet contains an entry, however, indicating that "A COPY OF TRANSCRIPT OF 12/3/96 HEARING SENT TO DEFT. AT JAIL." The attorney did not make any amendments to defendant's motion.

Also on May 29, 1997, defendant filed a handwritten memorandum of law in support of his motion to withdraw his guilty plea. In the memorandum, defendant asserted several instances of ineffective assistance of counsel and an allegation that he had "come into the possession of Newly Discovered Evidence." Defendant described the evidence as a "film of elicit sex acts at the time of events." Defendant requested that the court conduct an *in camera* review of the tape in order to assess defendant's constitutional claims while still protecting the alleged victim's privacy. Additionally on May 29, 1997, defendant filed a motion seeking to discharge his attorney and the appointment of another "total capacity counsel" in his place.

At the hearing on the motion to withdraw his guilty plea, defendant told the court that he wanted another attorney to subpoena Young and McKinney so that they could testify about statements they made to the Alton police department and to the grand jury, especially since McKinney had recanted her grand jury testimony. Defendant's attorney responded that he did not think the witnesses' testimony would be relevant to the issue before the court—whether defendant entered a voluntary guilty plea. Defendant also made allegations against his trial attorneys for their failure to call witnesses that could have testified that "Barbara Young had made false allegations to the grand jury."

Defendant testified that he had never seen the videotape (presumably the videotape allegedly showing Young and McKinney) even though he made numerous requests to view it before and after his guilty plea. Defendant testified, "If I hadn't been ignorant of the law I would not have pled guilty to this crime, because I am not guilty of this crime." Defendant further testified that he had several witnesses he wanted his attorneys to call but that he believed his attorneys would not call any witnesses if he went to trial.

Defendant read several rules to the court, and defendant contended the rules entitled him to vacate his guilty plea. Among defendant's allegations of error were that his attorney was required to file a certificate under Supreme Court Rule 604(d) stating that he examined the report of proceedings of the hearing on defendant's guilty plea, that his attorney did not review that transcript, and that defendant did not have any assistance from his attorney in preparing his motion to withdraw his guilty plea.

The trial judge stated that he had "reviewed the report of proceed-

ings." The judge informed defendant that his attorney had filed a speedy trial demand:

> "THE COURT: There was a motion filed by Mr. Bateman[;] it is on the record. We had a hearing. The case was continued on motion of the State to procure witness. The Court gave them X number of days.
>
> This case was set for *December the 3rd for trial*. Now, that day all parties appeared for trial. The State was ready to proceed, Mr. Bateman was ready to proceed to trial, as was [defendant's other attorney]. Whatever witnesses the defense had, they were ready to go at that time. \*\*\*
>
> \*\*\*
>
> [Rule] 402 admonishments were given to Mr. Holliday on December 3rd. Mr. Holliday, by the record, indicated that he understood all those rights. He did tell the Court that he was not threatened, coerced in any manner, to enter into this guilty plea.
> \*\*\*
>
> I think the record is clear \*\*\* that [Rule] 402 admonishments were given, [that] Mr. Holliday understood those admonishments[,] [a]nd that he pled guilty voluntarily and freely." (Emphasis added.)

The trial court denied defendant's motion to withdraw his guilty plea. Defendant's attorney then told the court that his "[Rule] 604(d) certificate" was on file and that he conferred with defendant twice by telephone and "for a short time" just before the hearing on defendant's motion to withdraw his guilty plea. Defendant's attorney stated that he "reviewed all the transcripts with reference to both the sentencing and the guilty plea." Again, we reiterate that the record indicates that the court reporter transcribed both the report of defendant's negotiated guilty plea and the report of defendant's sentencing hearing on May 30, 1997, the day after defendant's attorney made this statement. Both of the transcripts were file-stamped on June 17, 1997. At the end of the hearing, defendant again asked the court that "all transcripts and court proceedings be provided" to him. The court responded that all of the transcripts would be provided to defendant "pursuant to law and pursuant to statute, in the time period that they are required to be delivered."

The appellate defender's office was appointed to represent defendant on appeal. This court affirmed defendant's conviction. *People v. Holliday*, No. 5—97—0360 (November 3, 1998) (unpublished order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23)). Only two issues were raised in defendant's direct appeal: (1) that the trial court abused its discretion by not setting aside defendant's guilty plea because defendant was misled by his attorneys about his sentencing possibilities and (2) that defendant had a defense worthy of consider-

ation. This court determined that defendant was not misled, that he was properly admonished on his guilty plea, and that the State presented a proper factual basis for conviction of the offense.

## DEFENDANT'S FIRST POSTCONVICTION PETITION

On September 17, 1997, defendant filed his first *pro se* postconviction petition. In the petition, defendant alleged that he came into possession of newly discovered evidence, described as, "Affidavit from State's Attorney Chief Witness Barbara Young." Defendant alleged that he was entitled to an "evidentiary hearing" to determine whether defendant was prejudiced by his attorney's and the State's "failure to disclose this affidavit." Defendant attached to the petition his affidavit stating that on several occasions he asked his attorney to contact certain witnesses, that his attorney claimed that he had contacted these witnesses, but that none of the witnesses "ever showed up."

Also attached is a "Petition for Illinois Supreme Court Rule 604(d) Relief," in which defendant alleges that the attorney appointed to represent him on his motion to vacate guilty plea was ineffective because the attorney "did not read transcript of all proceedings [and] did not ascertain all of defendant's concerns." Defendant also alleged that he was denied his constitutional right to receive the effective assistance of counsel during his "Pre[ ]trial and Petition to withdraw guilty plea *** and prior thereto." Additionally, defendant alleged that in the "absence of counsel's errors," there is a "reasonable probability that the outcome of defendant's trial would have been different." Defendant also alleged that his attorneys' pretrial representation was deficient and that they committed "errors so serious as to warrant a reversal of defendant's conviction."

Defendant further alleged that his trial attorneys "failed to call or even interview witness[es] in the defendant's behalf." Defendant alleged that he gave his attorneys the names of Tamara McKinney, Eddie Hobbs, Joe Madison, and Jackie Taylor, that he told his attorneys that the testimony these witnesses could offer would have established defendant's innocence, and that their testimony would have contradicted "the testimony of Barbara Young[,] the prosecution's key witness in the case at bar."

Defendant also alleged what he called a "statute of limitations relief." Defendant cited the speedy trial statute (725 ILCS 5/103—5 (West 1996)) and alleged that he had been in custody from June 25, 1996, to December 2, 1996, a total of 161 days, without any delay attributable to defendant. Defendant asked that he be discharged based upon the speedy trial violation.

On October 9, 1997, the trial court dismissed the postconviction petition, finding it frivolous and patently without merit.

Defendant filed a second postconviction petition, which the trial court also dismissed. However, since we find that defendant is entitled to an evidentiary hearing on the first petition, we need not discuss the second petition.

## ANALYSIS

■ Defendant argues that his *pro se* postconviction petition raises multiple ineffective assistance of counsel claims which should not have been dismissed as frivolous. We have presented a detailed account of those portions of the record that pertain to these allegations. The allegations of the postconviction petition, when liberally construed, taken as true, and read in light of the trial court record, are sufficient to invoke relief under the Post-Conviction Hearing Act. Our legal analysis of the petition leads us to the conclusion that defendant has presented the gist of a meritorious claim of a constitutional violation and that he is entitled to an evidentiary hearing.

Defendant has raised at least three claims of ineffective assistance that entitle him to an evidentiary hearing in the trial court: (1) trial counsel's failure to call the petition for discharge for a hearing, (2) trial counsel's failure to subpoena witnesses for the trial and whether this failure caused defendant to enter an involuntary guilty plea, and (3) whether the attorney appointed to represent defendant on his motion to withdraw guilty plea violated Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)). This list of claims of constitutional deprivation is not meant to be exhaustive and may be expanded upon by defendant's attorney prior to the evidentiary hearing.

We first consider defendant's claim regarding his attorneys' failure to call the petition for discharge to a hearing. When an attorney fails to seek the discharge of his client on speedy trial grounds, the attorney may be found ineffective if there exists a reasonable probability that the client would have been discharged if a timely speedy trial motion had been filed and if there is no justification for the attorney's failure to file the motion. See *People v. Garcia*, 251 Ill. App. 3d 473, 479-80 (1993). Similarly, where the attorney files a speedy trial motion for discharge but then fails to call it for a hearing, there exists a question of ineffective assistance of counsel that should be reviewed in an evidentiary hearing.

The record is replete with evidence on this issue that should be reviewed in an evidentiary hearing. Defendant claims that the date to which the trial was continued, December 2, 1991, was the 161st day of defendant's continuous incarceration without any delay attributable to defendant. The trial court indicated that it thought December 2nd was the 160th day, but then defendant did not plead guilty until

December 3rd, the 161st day by anyone's reckoning. A question exists as to whether trial strategy was involved on the part of defendant's attorneys when they allowed him to plead guilty on the 161st day of his incarceration without first obtaining a ruling on the petition for discharge. See *People v. Dortch*, 303 Ill. App. 3d 839 (1999).

Since we have already set forth the relevant details of the trial record, we will not belabor them further, except to note that the trial court's December 2, 1996, order stated that defendant continued the trial setting of that date "[p]ursuant to court's request." Clearly, the reasons why the trial court would request a defendant to continue a trial setting on either the 160th or 161st day of the defendant's incarceration, and attribute the delay to the defendant, should be pursued in an evidentiary hearing. This is particularly true herein, since defendant raised this issue in the trial court before he filed his motion to withdraw guilty plea. In the "Dear Sirs" letter, defendant alleged that on December 2, 1996, his attorneys allowed "the State 24 more hours to produce the plaintiff," and he alleged that the trial judge made threats to his attorneys to coerce them to agree to the State's motion for continuance. These allegations should be reviewed by a judge other than the trial court judge. See 155 Ill. 2d R. 63(C)(1) (a judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where the judge has personal knowledge of disputed evidentiary facts concerning the proceeding or the judge is likely to be a material witness in the proceeding).

A second issue of constitutional deprivation raised by defendant's postconviction petition concerns his attorneys' failure to have any witnesses available for trial. In the court record, there are no subpoenas for any witnesses for the December 2, 1996, trial setting. Of course, either the State or the defense could have had witnesses ready to testify without subpoenas. However, the manner in which this case was delayed due to the State's inability to procure its two main, material witnesses prior to the October trial setting requires an evidentiary hearing to ascertain whether defendant's attorneys or the State was prepared to go to trial on December 2, 1996, and, if not, whether that failure caused defendant to enter an involuntary guilty plea. See *People v. Algee*, 228 Ill. App. 3d 401, 404 (1992) (a plea of guilty is deemed voluntary only if it is given with the assistance of competent counsel).

Finally, the postconviction petition and its supporting documents raise the possibility of Rule 604(d) violations. Rule 604(d) provides that, if a defendant is to appeal from a judgment entered upon a guilty plea, the defendant must first file a motion to withdraw the guilty plea and vacate the judgment. If the defendant is indigent, he or she shall

be appointed an attorney and the trial court "shall order a copy of the transcript" of the guilty plea hearing to be "furnished [to] the defendant without cost." 145 Ill. 2d R. 604(d). The rule further provides:

> "[D]efendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain his contentions of error in the sentence or the entry of the plea of guilty, has examined the trial court file and the report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." 145 Ill. 2d R. 604(d).

Our supreme court has emphasized that Rule 604(d) is a rule of procedure, not a suggestion, and "[i]t is incumbent upon counsel and courts alike" to follow it. *People v. Wilk*, 124 Ill. 2d 93, 103 (1988). In *People v. Denson*, 243 Ill. App. 3d 55, 62 (1993), a case with facts similar to those alleged by defendant, this court held that the trial court's failure to provide a defendant with a transcript of the guilty plea proceeding prior to the hearing on his motion to withdraw that guilty plea entitled the defendant to a new hearing on the motion to withdraw his guilty plea. Due to defendant's repeated requests for transcripts and the transcription dates certified by the court reporter, a question arises of which transcripts were available to defense counsel prior to the hearing on defendant's motion to withdraw his guilty plea.

We wish to emphasize that we have arrived at no conclusions regarding these matters. We find only that the allegations of the postconviction petition, when reviewed in light of the trial record, entitle defendant to a evidentiary hearing.

## CONCLUSION

For all of the reasons stated, we reverse the trial court's summary dismissal of defendant's postconviction petition, filed on September 17, 1997, and we remand this case for further proceedings on the postconviction petition in accordance with this opinion.

Reversed and remanded.

RARICK and KUEHN, JJ., concur.