THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY CHURCH, Defendant-Appellant.

Third District   No. 3—01—0148

Opinion filed October 2, 2002.

608

Kerry J. Bryson (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, Timothy Church, was charged by information with three counts of reckless homicide stemming from a fatal truck/automobile accident. Defendant entered into a negotiated *"Alford"* plea to count II (Class 2 felony) with a sentencing cap of 12 years. The other two counts were dismissed. Following a sentencing hearing, defendant was sentenced to 10 years in prison. Defendant subsequently filed a motion to extend the 30-day period in which to file his postplea motion under Supreme Court Rule 604(d) (188 Ill. 2d R. 604). That motion was granted by the trial court. The defendant then filed a motion to withdraw his "guilty plea" and vacate the sentence. Later, an amended motion to withdraw his "guilty plea" was filed. Following an evidentiary hearing on the motion, the motion was denied and the defendant filed this appeal.

On appeal, the defendant raises three issues: (1) his *"Alford* plea" is void and must be vacated where such a plea is not recognized in the Illinois Code of Criminal Procedure of 1963 (725 ILCS 5/100—1 *et seq.* (West 2000)) for causes other than those involving a violation of the Illinois Income Tax Act (35 ILCS 5/101 *et seq.* (West 2000)); (2) the trial court abused its discretion in denying his motion to withdraw his plea where trial counsel was ineffective and the *"Alford* plea" was the result of incompetent advice by trial counsel; and (3) the trial court abused its discretion in denying his motion to withdraw his plea as defense counsel labored under a conflict of interest while representing the defendant where the victim of the alleged offense had been an employee of defense counsel's law firm. In addition, the State raises a question of the appellate court's jurisdiction. For the following reasons, we find that an *"Alford* plea," as that term is understood in federal practice, is not available to an Illinois criminal defendant; however, the plea was properly accepted as a guilty plea. We also find no abuse of discretion in the trial court's rulings, and thus we affirm.

## Facts

On March 14, 2000, the defendant was charged by information

with three counts of reckless homicide. Each count involved the same alleged victim, Ellen Dunham. Count I (Class 3 felony) charged that the defendant, acting in a reckless manner, performed acts likely to cause death or great bodily harm in that he drove his Dodge Ram pickup truck at a high rate of speed and struck a Toyota Camry, thereby causing the death of a passenger in the Camry, Ellen Dunham. Count II (Class 2 felony) charged that the defendant committed the act while his blood-alcohol content was greater than .08. Count III (Class 2 felony) charged that the defendant was acting in a reckless manner and was under the influence of alcohol to a degree that rendered him incapable of safely driving when he committed the act.

On June 1, 2000, the defendant, with his attorney, David Cunningham, entered into a negotiated plea of guilty to count II of the information in exchange for a sentencing cap of 12 years' imprisonment and the State's dismissal of the remaining two counts. The court advised the defendant of the nature of the charge, the minimum and maximum terms of imprisonment, and the rights waived by pleading guilty. The record indicates that the parties and the trial court agreed in the characterization of the plea as an *"Alford* plea."

The following factual basis for the plea was then presented to the trial court: On the evening of March 13, 2000, the defendant drove his Dodge Ram pickup into the rear of a Toyota Camry being driven by Robert Dunham and in which Ellen Dunham was a passenger. Accident reconstruction evidence revealed that the defendant was traveling approximately 83 miles per hour at the time of impact. At the time of impact, the Camry was at a stop in a left-turn lane waiting for an arrow. The defendant was straddling the turn lane and the through lane at the point of impact. The responding officer would testify that he noticed the strong smell of alcohol emanating from the defendant's truck. Evidence would also be presented that a blood test at the hospital revealed the defendant had a .29 blood-alcohol content. Finally, evidence would also be presented that Ellen Dunham was a passenger in the Camry and suffered fatal injuries as a result of the collision.

Following the recitation of the basis for the plea, the defendant acknowledged that the recited evidence would be presented to the court at trial. A further discussion ensued over the characterization of the plea as an *"Alford* plea" as follows:

"[THE COURT]: Mr. Cunningham, do you agree the statement of facts I've heard are substantially correct, what the State would present?

[DEFENSE COUNSEL]: Yes, Your honor, I believe that is what the State would present to the Court.

[THE COURT]: And I take it you're entering this plea with your client under the *Alford* plea to limit his criminal liability although you're not limiting it very much here. Two years is what your [*sic*] talking about.

[DEFENSE COUNSEL]: Yes, Judge, that's true.

[THE COURT]: Is that correct, Mr.—

[THE DEFENDANT]: Yes, sir.

[THE COURT]: Church? Okay. Mr. Church, knowing the nature of the charge against you, the possible penalties, and knowing your rights under the law, do you still wish to plead guilty to the Count 2, reckless homicide, a Class 2 felony?

[THE DEFENDANT]: Yes."

The court then found that the defendant's guilty plea was knowingly and voluntarily entered, and entered judgment on the guilty plea.

A sentencing hearing was held on July 27, 2000. Both the State and the defendant presented evidence, and the defendant made a statement in allocution. Following arguments of the parties, the court imposed a sentence of 10 years' imprisonment.

On August 2, 2000, the trial judge called the parties back to court and made a statement on the record regarding the actual time the defendant would serve in prison. Specifically, the court noted that truth-in-sentencing provisions applied and defendant would therefore be required to serve 85% of his sentence, equal to eight years and six months of imprisonment.

On August 23, 2000, defense counsel filed a motion to extend the time for filing a postplea motion as the necessary transcripts had not been prepared. The trial court granted the motion and issued an order extending the time for filing a postplea motion.

On September 26, 2000, the defendant's motion to withdraw his plea and vacate the sentence, along with a motion to reconsider the sentence, were filed. In addition, counsel filed a Rule 604(d) certificate.

On October 5, 2000, David Cunningham filed a motion to withdraw as defense counsel. That motion was allowed, and attorney Kathleen Bailey entered her appearance for the defendant on November 1, 2000.

The defendant's new counsel filed amended motions on November 22, 2000, alleging that Cunningham had a conflict of interest in that the victim (Ellen Dunham) had been an employee of Cunningham's law firm.

Additionally, the amended motion contained allegations that the defendant's plea was not voluntary because Cunningham had misinformed the defendant as to the application of the 85% truth-in-sentencing statute. In support of this allegation, the defendant submit-

ted an affidavit in which he stated that at the time of the entry of his plea, he believed he was eligible for day-for-day credit on the sentence. Attached to the affidavit was a letter from Cunningham to the defendant dated July 28, 2000, the day after the sentence was issued. The letter appears to indicate Cunningham's opinion that the defendant would serve 85% after day-for-day credit. Also attached was a second letter to the defendant from Cunningham dated August 3, 2000. In this letter, Cunningham indicated that "there was a change in the statutes of the Illinois law and you are not entitled to that good time credit."

An evidentiary hearing was held on defendant's motions. Cunningham testified that he had some discussion with the defendant regarding truth-in-sentencing prior to the entry of the guilty plea; however, he had no recollection of the specifics of the discussion. Cunningham noted his letter of July 28 would likely indicate the defendant understood that he would actually serve less than half the 10-year sentence.

The trial court denied the defendant's motion to withdraw the guilty plea. The court noted that in order to succeed on the motion, the defendant had to show that, but for the counsel's misrepresentation, defendant would not have pled guilty. Additionally, the trial court found that despite the defendant's claim that he would not have pled guilty had he known of the 85% requirement, the plea was nonetheless knowing and voluntary. The trial court denied the defendant's motion to withdraw his guilty plea, and this appeal ensued.

## Analysis

Before addressing the defendant's issues on appeal, we must address the State's argument that the appellate court is without jurisdiction to hear this matter. Specifically, the State notes that Supreme Court Rule 604(d) provides that no appeal from a judgment entered on a guilty plea shall be taken unless the defendant files within 30 days of the date upon which sentence was imposed either a motion to reconsider or a motion to withdraw the plea. The State points out that sentence was imposed on July 27, 2000, and thus, defendant's motion to withdraw his guilty plea should have been filed before August 27, 2000. However, defendant's motion to withdraw plea and vacate sentence, along with a motion to reconsider sentence, was not filed until September 26, 2000. The State recognizes that the trial court entered an order extending the time for filing the motions; however, it maintains that such order was a nullity in that the trial court lacked the authority to extend the deadline imposed by Supreme Court Rule 604(d).

In support of this argument, the State cites *People v. Blanchette*, 182 Ill. App. 3d 396 (1989), and *People v. Scruggs*, 161 Ill. App. 3d 468 (1987). However, neither case involved a guilty plea or the application of Supreme Court Rule 604(d). In *Blanchette*, judgment was entered on March 30, 1988, and the defendant's notice of appeal was filed on May 2, 1988. The *Blanchette* court noted that the trial court has no authority to extend the time for filing of a notice of appeal. In *Scruggs*, the defendant was convicted on December 13, 1985. On January 9, 1986, defendant's posttrial motion was denied and sentence was imposed. On February 7, 1986, the trial court stayed a portion of the sentencing order and directed that the defendant's oral motion to reconsider the denial of the posttrial motion be filed by February 26, 1986. The appellate court held that the extension was improper, finding that the trial court had no authority to extend the 30-day deadline for filing a notice of appeal in order to allow the defendant to file a motion to reconsider the denial of a posttrial motion. *Scruggs*, 161 Ill. App. 3d at 471.

The State infers from its reading of Rule 604(d) and its interpretation of *Blanchette* and *Scruggs* that there are no circumstances under which the trial court could extend the 30 days between the imposition of sentence and the filing of a motion to reconsider sentence or a motion to withdraw guilty plea. While there appears to be no case law directly on point, the defendant points to some cases which implicitly stand for the proposition that the trial court may grant a motion to extend the time for filing a motion to reconsider sentence or a motion to withdraw guilty plea. In *People v. Frey*, 67 Ill. 2d 77, 84 (1977) our supreme court observed that "[o]ccasions might arise where a defendant might be entitled, on proper application and showing of good cause, to obtain an extension of time beyond the 30-day time limit prescribed by Rule 604(b)." See also *People v. Wilk*, 124 Ill. 2d 93, 109 (1988) ("[I]n the Wilk case it cannot be ascertained from the record whether the motion to withdraw the plea of guilty *or the request for extension of time to withdraw the plea* were timely filed. Whether these documents were timely filed has a direct bearing on the nature of the representation counsel gave to the defendant" (emphasis added)); *People v. Nicewanner*, 93 Ill. App. 3d 1, 4 (1981) (implicitly recognizing the right to obtain an extension of time for filing a post-plea motion—"no [Rule] 604(d) motion was filed within 30 days, nor was any motion to extend the time for filing the motion presented within the 30 days").

■ We find that this court has jurisdiction over this matter. Nothing in Rule 604(d) states that the trial court does not have authority to extend the time for filing a motion to reconsider sentence or a mo-

tion to withdraw guilty plea. A trial court has the inherent authority, upon proper application and showing of good cause, to grant an extension of time for filing a motion to reconsider sentence or a motion to withdraw guilty plea.

Moving to the substantive issues, the defendant first contends that his *"Alford* plea" is void and must be vacated where such a plea is not recognized in the Illinois Code of Criminal Procedure for causes other than those involving a violation of the Illinois Income Tax Act. Specifically, the defendant maintains that the Code of Criminal Procedure provides that a defendant may enter a plea of guilty, not guilty, or guilty but mentally ill. 725 ILCS 5/113—4(a) (West 2000). Defendant likens an *"Alford* plea" to a plea of *nolo contendere* and notes that the plea of *nolo contendere* is only permitted under the Illinois Income Tax Act (see 725 ILCS 5/113—4.1 (West 2000) ("A defendant who is charged with a violation of the Illinois Income Tax Act may plead not guilty, guilty or, with the consent of the court, nolo contendere")).

The defendant surmises from the listing of *nolo contendere* as a plea only for violations of the Income Tax Act that the legislature forbids the entry of a plea of *nolo contendere* in all other cases. In support of his argument, the defendant then notes that the terms *"Alford* plea" and *"nolo contendere* plea" are often used interchangeably. See *People v. Holliday*, 313 Ill. App. 3d 1046 (2000). Thus, the defendant reasons, *"Alford* pleas" must be void in all but tax cases, and since the plea is void, the judgment on the plea must be void.

■ The problem with the defendant's reasoning is that an *"Alford* plea,"* despite some courts referring to it as a *nolo contendere* plea, is, in fact, a GUILTY plea and is recognized as such by our supreme court in *People v. Barker*, 83 Ill. 2d 319, 332 (1980). See also *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). In an *"Alford* plea" a defendant pleads *guilty* yet continues to proclaim his innocence. On the other hand, a plea of *nolo contendere* is more in the nature of a *demurrer*, in that the defendant admits only the alleged facts, making it more akin to a stipulated bench trial than an actual guilty plea. In any event, the case law clearly supports the proposition that *"Alford* pleas" are permissible in Illinois courts.

■ *Barker* speaks directly to the instant matter. In *Barker*, our supreme court held that a judge may accept an *"Alford* plea" as a plea of guilty and enter a judgment of conviction on the plea, provided the record reflects a factual basis from which a trier of fact could find the defendant guilty. *Barker*, 83 Ill. 2d 332-33. Following *Barker*, we find in the instant matter that the *"Alford* plea" was nothing more than a plea of guilty and the record reflected a factual basis from which a

trier of fact could find the defendant guilty. While it would be more efficient were trial courts to point out to a defendant and his or her counsel that an *"Alford* plea" is, in fact, a plea of guilty, so long as the record reflects a factual basis for a plea of guilty, the conviction upon which the plea is based will be affirmed.

The defendant next maintains that the trial court abused its discretion in denying his motion to withdraw his guilty plea based upon an allegation that trial counsel was ineffective and the *"Alford* plea" was the result of incompetent advice by trial counsel. Specifically, the defendant maintains that his attorney did not advise him that if he pled guilty he would have to serve 85% of his sentence. Had he known that fact, defendant asserts, he would not have pled guilty. Following an evidentiary hearing, the trial court found that effective assistance had been rendered and dismissed the motion to withdraw the guilty plea. We agree.

■ A defendant has no absolute right to withdraw a guilty plea and bears the burden of establishing the need to withdraw his plea. *People v. Hirsch*, 312 Ill. App. 3d 174 (2000). Whether to permit a guilty plea to be withdrawn is within the sound discretion of the trial court (*People v. Pugh*, 157 Ill. 2d 1 (1993)), whose decision will not be disturbed on appeal absent an abuse of discretion. *Hirsch*, 312 Ill. App. 3d at 179.

■ The standard to be applied for determining whether a defendant was denied effective assistance of counsel in entering a guilty plea is the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). See *People v. Jones*, 144 Ill. 2d 242 (1991). To demonstrate that the defendant was deprived of effective assistance of counsel, he must establish both that his attorney's performance was deficient and that he suffered prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The performance prong is the standard inquiry into the attorney's competence, while the prejudice prong focuses on whether counsel's inadequate performance affected the outcome of the plea-bargaining process. In other words, to prove prejudice, the defendant must show that, but for his attorney's incompetence, he would have rejected the plea arrangement and would have proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370 (1985). Further, the question of whether the error prejudiced the defendant depends largely upon predicting whether the defendant would have likely succeeded at trial. *People v. Pugh*, 157 Ill. 2d at 15.

■ Reviewing the record, it simply cannot be said that the trial court abused its discretion in finding that the defendant had failed to

establish ineffective assistance under the *Strickland* test. The record is inconclusive as to whether defense counsel properly advised the defendant as to the impact of the truth-in-sentencing provision upon the length of time defendant would actually serve. The record does establish, however, that there was some discussion of defendant being required to serve 85% of his sentence. This evidence includes the two letters sent to the defendant by his attorney, Cunningham, as well as defendant's wife's, Kathy Church's, testimony that Cunningham discussed the 85% figure with her. However, as the defendant points out, it appears that Cunningham may have advised the defendant that he would only have to serve 85% of his sentence after day-for-day good-time credit.

However, even if the defendant could establish that Cunningham gave him incorrect advice regarding the impact of truth-in-sentencing upon his total prison time, it is clear that the defendant utterly failed to establish that he was prejudiced by this erroneous advice. To establish that the error in counsel's performance prejudiced the defendant in causing him to plead guilty rather than go to trial, defendant must demonstrate that it was likely he would have succeeded had he gone to trial. *People v. Huante*, 143 Ill. 2d 61 (1991).

Here, the record fails to support the defendant's contention. The facts that would have come out at trial overwhelmingly established defendant's guilt of reckless homicide, a Class 2 felony. Had defendant rejected the plea agreement and gone to trial, it is sheer fantasy for the defendant to maintain that he would have succeeded.

Defendant asserts that he can prove prejudice by speculating that had he known of the 85% rule, he might have attempted to negotiate a better deal for himself. Defendant offers no authority for the proposition that he may show prejudice by simply speculating that he might have held out for a better deal. Instead, the defendant cites *People v. Brown*, 309 Ill. App. 3d 599 (1999), for the proposition that he can show prejudice by asserting that he could have made a better deal. However, *Brown* is clearly distinguishable. In *Brown*, the defendant rejected a plea offer and proceeded to trial after which he was convicted of aggravated battery with a firearm. At sentencing, the defendant learned for the first time that he would be sentenced to life imprisonment as a habitual offender. On appeal, the defendant alleged he was prejudiced by counsel's failure to inform him of his exposure to a life sentence if he rejected the plea offer and went to trial. In other words, had defendant known that he faced a life sentence if he went to trial, he would have accepted the plea. The facts in *Brown* are clearly distinguishable from the instant matter. Clearly, the trial court did not abuse its discretion in finding that the defendant was not prejudiced

by his defense counsel's performance during the negotiation of his plea.

Likewise, the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea based upon the allegation that his counsel had a conflict of interest. We find no evidence in the record from which the trial court could have found a conflict of interest. Only two facts can be gleaned from the instant record: that the victim was a former employee of counsel's law firm and defendant was advised of the former relationship of the victim and counsel's firm. There is no evidence as to when the victim was employed by the law firm, whether it was at the time of her death or many years prior, or even if the victim worked at the firm at the same time defendant's counsel did. Based upon the scant record, there is nothing upon which to find that the trial court abused its discretion in denying the defendant's motion.

For the foregoing reasons, the judgment of conviction of the circuit court of Rock Island County is affirmed.

Affirmed.

SLATER and McDADE, JJ., concur.