People v. Roby

Rule 23 order filed
 NO. 5-04-0165

February 14, 2005;

Motion to publish granted
 IN THE

March 17, 2005.

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Clinton County.  

)

v. )  No. 03-CF-16

)

ALFRED ROBY, )  Honorable

)  Kelly D. Long, 

     Defendant-Appellant. )  Judge, presiding.  

___________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Alfred Roby, the defendant, appeals from the denial by the circuit court of Clinton County of his motion to withdraw his negotiated plea of guilty to aggravated battery.  He asserts that the trial court committed reversible error when it conducted a hearing on his motion to withdraw his plea, because the defendant was mentally unfit at the time of the hearing on the motion.  He seeks the reversal of the trial court's denial of his postplea motion and a remand of the case to the circuit court with directions to make a determination of his current mental status and to allow him to participate in a hearing on his motion to withdraw his plea when he is mentally fit to do so.

BACKGROUND

On February 25, 2003, the defendant, then an inmate in the Department of Corrections (Department) at Centralia Correctional Center (Centralia), was charged in Clinton County with aggravated battery for having struck another inmate with a barbell on November 6, 2002.  The record substantiates that he was transferred to Menard Correctional Center (Menard) in November 2002.  Attorney John Hudspeth (Hudspeth) was appointed to represent him, and on June 3, 2003, the defendant entered a negotiated plea of guilty to aggravated battery in exchange for a recommendation of a sentence of three years' imprisonment.  The defendant participated in the plea process by providing what were in essence "yes" or "no" answers to the court's inquiries.  The preliminary hearing testimony of a Department employee about the defendant's act of striking another inmate with a 30-pound barbell was utilized by the court as the factual basis for the plea.  The court was informed about the defendant's criminal history and accepted the plea.  The defendant was sentenced to a term of three years in prison, to be served consecutively to the sentence for retail theft for which he was then incarcerated. 

On June 26, 2003, the defendant filed a 
pro se
 motion to withdraw his plea and vacate his sentence.  He contended that his plea was entered while he was mentally incompetent due to the conditions under which he was being held in segregation at Menard, where he was subjected to ill treatment at the hands of other prisoners and the correctional officers, who were conspiring to extend his time in custody and disregarding his medical needs.  Joseph Heiligenstein (Heiligenstein) was appointed on July 1, 2003, to represent the defendant on his motion to withdraw his plea.  On September 5, 2003, counsel filed a motion to withdraw the plea and a certificate pursuant to Supreme Court Rule 604(d) (188 Ill. 2d R. 604(d)).  On October 16, 2003, counsel moved for a fitness examination and a fitness hearing.  The motion was granted on November 3, 2003.

On November 12, 2003, S. D. Parwatikar, M.D., examined the defendant.  On January 7, 2004, he filed a report that was dated December 2, 2003.  The report related that the defendant had been diagnosed and treated for bipolar disorder and paranoid schizophrenia since the age of 36, that he was periodically treated by the Department for his mental illness, that he had been transferred from Centralia to Menard in November 2002, and that after his transfer to that prison he refused to take the medication that was prescribed by Dr. Mirza Baig, the chief psychiatrist at Menard.  Dr. Parwatikar diagnosed the defendant as being a paranoid schizophrenic who exhibited acute symptomology due to his refusal to accept the treatment provided for him at Menard by Dr. Baig.  The doctor found that the defendant's mental status rendered him unfit to stand trial.  He lacked the capacity to assist his attorney in his defense, but if medicated, he would respond to medications and return to fitness.  Dr. Parwatikar also filed a letter in which he related that Dr. Baig had confirmed that the defendant was being treated for bipolar disorder, not otherwise specified, and substance-induced mood disorder and that he had paranoid and persecutory delusions.  Dr. Baig had also confirmed that the defendant had been hospitalized a number of times from 1979 forward for mental health reasons.  Dr. Baig stated that at times the defendant did agree to take his medication but that even when he took his medication, he did not take it in the manner in which it was prescribed.

On January 5, 2004, defense counsel filed an amended motion to withdraw the defendant's plea.  The amended motion reasserted the prior allegations and added the allegation that the defendant was mentally unfit to enter his plea.

The defendant's motion to withdraw his plea was heard on January 8, 2004.  Dr. Parwatikar testified that the defendant was delusional and exhibited paranoid and persecutory ideation, that he was not capable of imparting information in a rational and factual manner when the doctor examined him on November 12, 2003, and that he was not feigning mental illness.  The doctor related that it was impossible to discern whether the defendant's refusal to take his antipsychotic and antianxiety medication was sporadic or continuous.  Dr. Parwatikar believed that the defendant could become capable of communicating effectively with his counsel if he took his medication.  The doctor used the term "fit to stand trial" to describe the mental state that was desired for the defendant, although he was admittedly not being examined in order to determine whether a prosecution could proceed against him.  He was unable to retroactively assess the defendant's mental condition or to state whether or not the defendant was able to assist in his defense on June 3, 2003, when he entered his guilty plea.

Attorney Hudspeth was called to testify.  When Hudspeth questioned whether the defendant had waived the attorney-client privilege, Heiligenstein stated that he needed to speak with the defendant about whether he wished to waive the privilege but that he did not know whether or not the defendant could assist Heiligenstein.  A recess was taken to allow Heiligenstein to confer with the defendant.  The proceedings resumed without any discussion of whether the defendant was capable of waiving attorney-client confidentiality or if he had in fact agreed to do so.  Hudspeth testified about the circumstances surrounding the defendant's entry of the plea.  He asserted that he and the defendant had discussed the facts of the case and his legal options, they had discussed two different offers that had been made by the State, and the defendant "seemed very pleased and relieved and satisfied" when he entered his plea.  Hudspeth testified that at the time of the plea he had no questions about the defendant's mental ability to understand the charge against him or his ability to assist his counsel and that he would not have allowed the defendant to plead if doubts about his mental status had been present.  Hudspeth recognized that the defendant was emotionally troubled, and he knew that the defendant had a history of being medicated by prison physicians, but he could not state whether the defendant had been taking medications at the time that he entered his plea.  Hudspeth admitted that the defendant was emotionally distraught when he spoke with him about the case, but the attorney was certain that the defendant was not emotionally distraught when he pleaded guilty.  Hudspeth would have sought a fitness examination if he had believed that the defendant was unfit to plead guilty.

The court took judicial notice of the transcripts of the preliminary hearing and the guilty plea, the contents of the court file, and Dr. Parwatikar's report and letter.  It characterized the proceeding before it as a fitness hearing "in kind of an indirect way."  Defense counsel argued that the defendant was unfit at the time that he pleaded guilty and that thus he was entitled to have his guilty plea vacated.  The State contended that the defendant had failed to meet his burden of proof in regard to his allegation that he was unfit to enter his plea despite the fact that the evidence seemed to establish that the defendant was unfit to assist his counsel at the hearing taking place.  The court took the matter under advisement, and on March 5, 2004, it made an extensive docket sheet entry in which it denied the defendant's motion to withdraw his plea.

CONTENTIONS ON APPEAL

On appeal, the defendant contends that he is entitled to the vacation of the denial of his motion to withdraw his guilty plea because the court committed reversible error by holding a hearing on his motion to withdraw his plea at a time when the defendant was unfit to assist his counsel in presenting his case.  He seeks the remand of his case for a new hearing on his motion to withdraw his plea when he is mentally fit to participate in his defense.  The defendant urges the court to address the issues despite the fact they might be considered to have been waived through counsel's failure to seek a continuance of the hearing.  In the alternative, he asserts that posttrial counsel provided inadequate assistance by proceeding with the hearing at a time when the defendant was unfit to participate in his own defense, warranting the consideration of the issue that could otherwise be deemed to have been waived.

The State concedes that statutory law and case law "suggest" that the provisions for the appointment of counsel to represent a defendant in posttrial proceedings are meaningless if a defendant is mentally unfit to rationally communicate with counsel.  It contends that in the case at bar the defendant's alleged unfitness at the time of the hearing on his motion to withdraw his plea did not prejudice the defendant's cause because his counsel competently represented him at the hearing in regard to matters that were of record and the record supported the conclusion that he had been fit to enter his guilty plea.  It argues that any claims that might be based on extrarecord personal recollection or information that is known only to the defendant may be litigated via the Post-Conviction Hearing Act (725 ILCS 5/122-1 
et seq.
 (West 2002)) when he becomes mentally fit.  The State does not address in its brief the possibility that procedural default precludes the consideration of the issues on appeal, thereby procedurally defaulting any contention that the issue before the court has been waived or procedurally defaulted.

DISCUSSION

Whether to permit a guilty plea to be withdrawn is within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent an abuse of discretion.  
People v. Church
, 334 Ill. App. 3d 607, 615, 778 N.E.2d 251, 257 (2002).

After accepting a negotiated plea of guilty, a court must comply with Supreme Court Rule 605(c) (188 Ill. 2d R. 605(c)).  Rule 605(c) provides, in relevant part, that the trial court must advise the defendant: 

"(1) that the defendant has a right to appeal; 

(2) that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds for the motion;

* * *

(5) that if the defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant with the preparation of the motions."  188 Ill. 2d R. 605(c).

The provision by the supreme court for appointed counsel at the posttrial motion stage is indicative of the supreme court's continuing concern for the constitutional rights of defendants, even after they have lost the presumption of innocence.

The defendant's appointed counsel properly became concerned about the defendant's mental status and obtained a psychiatrist's assessment that concluded that the defendant was incapable of communicating effectively and rationally with counsel.  That assessment, which was unrebutted at the hearing on his motion to withdraw his plea and is not challenged on appeal, established that the defendant was in fact mentally unfit at the time of the hearing.   The State recognizes that parallels exist between the instant case and the situation that was presented in 
People v. Owens
, 139 Ill. 2d 351, 564 N.E.2d 1184 (1990).  There, the supreme court held that the trial court was obligated to consider whether a postconviction petitioner was mentally competent to consult with his appointed counsel at the time his postconviction petition was considered by the trial court.  The Illinois Supreme Court held that the appointment of counsel by the court is meaningless, "an empty formality," if a defendant in postconviction proceedings is unable due to mental unfitness to communicate with counsel in a rational manner.  
Owens
, 139 Ill. 2d at 359-60, 564 N.E.2d at 1187.  The 
Owens
 case was remanded to the lower court to allow it to determine, from facts brought to its attention by either the defendant's counsel or its own observations, whether there was a 
bona fide
 doubt about the defendant's mental ability to communicate with his postconviction counsel.  If such a doubt existed and if a psychiatric examination and an evidentiary hearing disclosed that the defendant was incompetent to consult with his postconviction counsel, the defendant was to be remanded to the Department until he was rendered fit to consult with counsel in the presentation of his postconviction petition.  
Owens
, 139 Ill. 2d at 366, 564 N.E.2d at 1190.

In the instant case, unlike 
Owens
, the trial court did not resist counsel's efforts to have his client's mental status evaluated.  Once the evaluation was completed and Dr. Parwatikar had testified, defense counsel, the State, and the court were on notice that the defendant was incapable of meaningfully assisting his counsel in the presentation of his postplea motion to withdraw his plea.  The court characterized the proceedings as being "kind of like" a fitness hearing.  It was, in fact, the functional equivalent of a fitness hearing pursuant to section 104-11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11 (West 2002)).  Despite its knowledge that the defendant was unfit to assist his counsel in the presentation of his motion to withdraw his plea, the court allowed the defendant's guilty plea counsel to testify about his interactions with the defendant prior to and at the time of the entry of his guilty plea.  Given that the defendant was unfit to assist his posttrial counsel, it is intuitively obvious that the defendant could not have made a valid waiver of the attorney-client privilege.  His counsel's testimony, which was elicited after counsel had expressed concern about whether or not he could legitimately testify, violated the trust that the defendant placed in him.  The trial court failed to fulfill its duty to protect a defendant who was not capable of protecting himself.  Posttrial counsel also failed to protect his client's interests by neglecting to object to Hudspeth's testimony where the defendant was incapable of assisting his posttrial counsel, particularly when the trial court appears from the record to have based its decision to deny the defendant's posttrial motion in large part on Hudspeth's testimony about his interactions and retroactive assessment of the defendant's mental status.

The State contends that the trial court properly concluded that the defendant's motion to withdraw his plea was without merit because the transcript of the plea proceedings supported the conclusion that the defendant was competent to assist his counsel at the time of the plea.  It asserts that the defendant's answers to the court's questions were "responsive, and not merely rote yes or no answers."  This court's reading of the transcript of the plea proceedings leads to the conclusion that the defendant's answers to the court's inquiries 
were
 rote replies.  No response required any real elaboration on the part of the defendant.  The fact that he told the court that he was 52 years old in response to a question about his age and that he had "12 and a half years" of schooling in response to a question about his education does not detract from this conclusion. 

The State argues that even if the court had actually made a formal ruling that the defendant was incompetent on the day that his motion to withdraw his plea was argued, his appointed counsel argued the motion competently and adequately represented the defendant.  The State maintains that if in the future the defendant regains his competence and remembers some other grounds for the withdrawal of his plea, he can raise the issue in a petition for postconviction relief.  See 
Owens
, 139 Ill. 2d at 366, 564 N.E.2d at 1190.

The case at bar, unlike 
Owens
, is a direct attack, not a collateral attack, on the defendant's conviction.  It is reasonable to assume that a defendant must have his wits about him and be able to assist his counsel to very nearly the same degree when his motion to withdraw his guilty plea is heard as was necessary at the time that his guilt or innocence was determined.  The defendant's mental status put him at a disadvantage in the presentation of his motion to withdraw his plea.  He could not cooperate with posttrial counsel, and he could not competently make the decision to waive the attorney-client privilege with plea counsel, to which he was entitled.  The logical parallels between this case and the 
Owens
 case mandate that the trial court's denial of the defendant's motion to withdraw his plea be vacated and that the cause be remanded to the circuit court with directions to ascertain whether the defendant has become competent to assist appointed counsel.  If and when he becomes competent to do so, new proceedings on his amended postplea motion may be conducted.

CONCLUSION

For the foregoing reasons, the denial of the defendant's posttrial motion is vacated, and the cause is remanded to the circuit court of Clinton County with directions.

Vacated; cause remanded with directions.

DONOVAN, P.J., and CHAPMAN, J., concur.

                                      NO. 5-04-0165

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Clinton County.  

)

v. )  No. 03-CF-16

)

ALFRED ROBY, )  Honorable

)  Kelly D. Long, 

     Defendant-Appellant. )  Judge, presiding.  

___________________________________________________________________________________

Rule 23 Order Filed:
 February 14, 2005

Motion to Publish Granted:
 March 17, 2005

Opinion Filed:
 March 17, 2005 

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable James K. Donovan, P.J., and 

Honorable Melissa A. Chapman, J.,

Concur

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Edwin J. Anderson, Assistant Defender, Office

for
 of the State Appellate Defender, 730 E. Illinois Highway 15, Suite #1, Mt. Vernon,

Appellant
 IL 62864

___________________________________________________________________________________

Attorneys
 Hon. Henry Bergmann, State's Attorney, Clinton County Courthouse, Carlyle, IL

for
 62231; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Kendra S.

Appellee
 Peterson, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730

E. Illinois Highway 15, Suite #2, P.O. Box 2249, Mt. Vernon, IL 62864

___________________________________________________________________________________