2014 IL App (3d) 120639

Opinion filed October 9, 2014

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2014

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-12-0639 |
| v. | ) ) | Circuit No. 08-CF-131 |
| GEORGE F. ZELENAK, | ) ) ) | Honorable Howard C. Ryan, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1        Defendant, George F. Zelenak, pled guilty to aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2008)) and aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2008)) and was sentenced to a total of 36 years' imprisonment. Defendant filed a motion to withdraw his plea, which the trial court denied. Defendant appeals, arguing that the court erred in conducting a hearing on defendant's motion to withdraw his guilty plea without ordering a fitness evaluation. We reverse and remand.

¶ 2                                                    FACTS

¶ 3     In March 2008, defendant was charged by indictment with aggravated kidnapping, aggravated criminal sexual assault, and criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2008)). On April 15, 2009, private attorney Joseph Navarro filed a motion for a fitness evaluation. The trial court granted the motion. Dr. Timothy Brown's evaluation concluded that defendant was fit, and the court found that defendant was fit to stand trial.

¶ 4     On December 3, 2009, defendant entered an open guilty plea to charges of aggravated kidnapping and aggravated criminal sexual assault in exchange for the dismissal of the criminal sexual assault charge. On January 15, 2010, the trial court sentenced defendant to two consecutive terms of 18 years' imprisonment.

¶ 5     On February 11, 2010, Navarro filed a motion to withdraw the guilty plea, arguing that defendant did not enter into the plea knowingly and voluntarily. On February 16, 2010, the trial court allowed Navarro to withdraw and appointed the public defender to represent defendant. The matter was continued several times until December 17, 2010, when the public defender reported that a Department of Corrections (DOC) psychiatrist informed him that defendant had difficulty "comprehending what [was] going on." As a result of defendant's incarceration, the State arranged for further psychiatric testing, and the case was continued. The court subsequently ordered Dr. Robert Chapman to conduct a fitness examination.

¶ 6     Chapman's report stated that defendant suffered from a mental condition that rendered him unable to understand the nature and purpose of the proceedings against him or assist in his defense. Chapman's report concluded that it was unlikely that defendant would be rendered fit within one year with treatment.

¶ 7     On September 15, 2011, the State advised the court that it had also received a fitness evaluation from Brown. The State stipulated to the evaluations prepared by Chapman and

Brown. Brown's evaluation stated that defendant was not fit to stand trial, but could be returned to fitness in one year with the proper treatment. The State asked that the matter be set for a hearing on defendant's motion to withdraw his plea, and the public defender suggested that part of the hearing focus on the issue of whether defendant was required to be fit in order to cooperate with counsel on the motion to withdraw the guilty plea.

¶ 8       On October 18, 2011, defendant filed an amended motion to withdraw his guilty plea. In addition to the earlier arguments, defendant contended that he did not receive effective assistance of counsel. On October 20, 2011, the trial court allowed the public defender to withdraw, and attorney Randolph Gordon entered an appearance on defendant's behalf.

¶ 9       On November 30, 2011, the State noted that there were two reports raising questions about defendant's fitness, and defendant had been seeing a psychologist or psychiatrist while incarcerated. The court granted a continuance to allow defendant to receive further treatment.

¶ 10       On July 27, 2012, the case was called for a hearing on defendant's amended motion to withdraw his guilty plea. Defendant testified that he did not understand the guilty plea proceedings and he pled guilty on his parents' instruction. On cross-examination, defendant stated that his parents told him that he could no longer live at their house if he did not plead guilty. Defendant's only memory of the plea was that before pleading guilty, Navarro advised defendant to sign a piece of paper that would allow defendant to "stay out for Christmas and New Year's." Defendant thought he was signing a document informing him that he needed to return for another court date.

¶ 11       Navarro testified that when he initially met with defendant, he observed some characteristics that might raise a fitness issue. However, after he was released on bond, defendant's mental health improved. Ultimately, Navarro thought defendant was fit to stand

3

trial. On the day of the plea, Navarro believed defendant knowingly and voluntarily entered the plea, and Navarro did not notice any threats from defendant's parents.

¶ 12     The trial court found defendant received effective assistance of counsel, and defendant knowingly and voluntary entered the guilty plea. The court denied defendant's motion to withdraw his plea, and defendant appealed.

¶ 13                                    ANALYSIS

¶ 14     Defendant argues that the trial court abused its discretion by failing to order a fitness hearing before proceeding to the hearing on defendant's motion to withdraw his guilty plea. We review the trial court's fitness determination for an abuse of discretion. *People v. Hanson*, 212 Ill. 2d 212 (2004). A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Tolefree*, 2011 IL App (1st) 100689.

¶ 15     A defendant is presumed fit absent circumstances raising a *bona fide* doubt of his fitness. *People v. Sanchez*, 169 Ill. 2d 472 (1996). If a *bona fide* doubt as to a defendant's fitness exists, the trial court is obligated to conduct a hearing to determine defendant's competency. *People v. McCallister*, 193 Ill. 2d 63 (2000). The defense, State, or court, "at any appropriate time before a plea is entered or before, during, or after trial" may raise the issue of a defendant's fitness. 725 ILCS 5/104-11(a) (West 2008). A defendant is unfit to stand trial if, as a result of mental or physical condition, he is unable to understand the nature and purpose of the proceedings or to assist in his defense. *People v. Burt*, 205 Ill. 2d 28 (2001). Section 104-11 does not expressly provide for a postplea fitness determination; however, the principles have been applied to proceedings on a motion to withdraw a guilty plea. See *People v. Roby*, 356 Ill. App. 3d 567 (2005).

4

¶ 16        In the instant case, defendant's fitness was initially questioned before the guilty plea was entered. At that time, Brown evaluated defendant and found that he was fit to stand trial. After defendant filed a motion to withdraw his guilty plea, defendant's fitness was again questioned, and two mental health evaluations were conducted. The two evaluations concluded that defendant was unfit, and the court continued the case to allow defendant to continue receiving mental health treatment, but it did not set the matter for a fitness hearing. From the record, it seems that the public defender intended to use the motion to withdraw the guilty plea hearing as a hybrid fitness hearing, but defendant's postplea fitness was not made a part of the July 2012 hearing. Nonetheless, reports of defendant's DOC mental health treatment and unfitness determinations raised a *bona fide* doubt of defendant's fitness. Consequently, the trial court erred when it did not conduct a fitness hearing to determine defendant's fitness before resolving defendant's motion to withdraw the guilty plea.

¶ 17        Our decision is consistent with *Roby*, where the court held that a defendant must be fit for proceedings on his motion to withdraw his guilty plea. The State argues that *Roby* is inapplicable to the present case because, in *Roby*, defense counsel requested a fitness hearing and the trial court conducted the "functional equivalent of a fitness hearing." *Roby*, 356 Ill. App. 3d at 572. Although defense counsel in the instant case did not request a fitness hearing, defendant's DOC mental health treatment and evaluations concluding that he was unfit raised a *bona fide* doubt of defendant's fitness. From this evidence, the trial court had a duty to *sua sponte* order a fitness hearing. *McCallister*, 193 Ill. 2d at 110-11 (the court has a duty to order a fitness hearing *sua sponte* once facts are presented that raise a *bona fide* doubt of a defendant's fitness because it is a violation of due process to convict an unfit defendant (citing *People v. Murphy*, 72 Ill. 2d 421, 430 (1978) (fundamental constitutional nature of the fitness requirement

5

creates a duty for the trial court to hold a fitness hearing once a *bona fide* doubt of a defendant's fitness is raised))). Therefore, we conclude that the trial court abused its discretion when it did not hold a fitness hearing and reverse the denial of defendant's motion to withdraw his guilty plea and remand the cause with instruction to conduct a fitness hearing before further postplea proceedings.

¶ 18                                CONCLUSION

¶ 19        The judgment of the circuit court of La Salle County is reversed, and the cause is remanded for a fitness determination and further postplea proceedings.

¶ 20        Reversed and remanded.

¶ 21        JUSTICE SCHMIDT, dissenting.

¶ 22        To be clear, the defendant does not argue that the trial court erred in denying his motion to withdraw his guilty plea. As the State correctly notes, a defendant does not have an automatic right to withdraw a plea of guilty. *People v. Delvillar*, 235 Ill. 2d at 520. "Rather, defendant must show a manifest injustice under the facts involved. [Citation.] The decision of the trial court will not be disturbed unless the plea was entered through a misapprehension of the facts or of the law, or if there is doubt as to the guilt of the accused and justice would be better served by conducting a trial. [Citation.] Where the defendant has claimed a misapprehension of the facts or of the law, the misapprehension must be shown by the defendant. [Citation.]" *Id.*

¶ 23        Nowhere in defendant's arguments to this court can I find an assertion that the trial court improperly denied his motion to withdraw his guilty plea due to his misapprehension of the law or the facts. Nor can I find an argument made by defendant that justice would be better served by conducting a trial. This is not surprising given the factual basis offered below of defendant's guilt. The State proffered that the victim would positively identify the defendant as the person

6

who had beaten, kidnapped and sexually assaulted her. The State also indicated that the victim made a point of preserving deoxyribonucleic acid (DNA) evidence, which would prove defendant's DNA was both in and on the victim after the attack. Moreover, the victim's blood was found inside defendant's vehicle. It is not surprising defendant fails to argue that the trial court abused its discretion when denying his motion; it is hard to contemplate exactly how the defendant could satisfy the factors discussed in *Delvillar* entitling him to withdraw his guilty plea.

¶ 24 Nevertheless, the majority concludes that the trial court erred by conducting the hearing on defendant's motion to withdraw his guilty plea without first holding a fitness hearing. The only statutory support for this conclusion cited by the majority is section 104-11 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104-11(West 2008)). The majority acknowledges, however, that section 104-11 does not "provide for a postplea fitness determination." *Supra* ¶ 15. As I will discuss later, I think there are logical reasons that it does not. At least not after sentencing.

¶ 25 Defendant was well beyond the postplea stage when he filed his motion to withdraw. Defendant filed his motion postsentencing. The Code clearly applies to the "issue of the defendant's fitness for trial, to plead, or to be sentenced" and not defendant's fitness after having been sentenced. 725 ILCS 5/104-11 (West 2008).

¶ 26 Likewise, the majority's reliance on *McCallister* is misplaced. Citing to *McCallister*, the majority concludes that "the trial court had a duty to *sua sponte* order a fitness hearing" in this matter "because it is a violation of due process to convict an unfit defendant." *Supra* ¶ 17. Defendant had already been convicted. This motion was not about convicting defendant but, rather, "unconvicting" defendant. No one here, including defendant, has raised an issue

7

regarding defendant's fitness at the time he was convicted. The entire discussion of fitness in *McCallister* involved "the accused's fitness to stand trial or be sentenced." *McCallister*, 193 Ill. 2d at 111. Moreover, the *McCallister* court held that the trial court did not err by failing to "*sua sponte* inquire into defendant's fitness following" testimony that a nurse at the county jail stated defendant had not been taking various medications. *Id*. at 112.

¶ 27        We should consider the ramifications of the majority decision. There are obvious reasons why the law provides for fitness hearings before trial and while a defendant is facing conviction. I submit that those reasons disappear once the defendant has been convicted. (Defendant is not actually convicted until he/she is sentenced; without a sentence, there is no conviction.) The upshot of the majority decision is that there can be no hearing on the defendant's postconviction motion unless and until he is found fit. Think about that. So, what happens when a defendant with a meritorious postconviction motion is found to be unfit? That is, suppose his mental condition deteriorated to the point where he could not understand the proceedings. Under the majority's ruling, we do not let a wrongfully convicted defendant out of jail if he becomes unfit after conviction. A wrongfully convicted person whose mental health deteriorated after conviction, and who could not be made fit again, would stay in prison because no hearing could be held on his postconviction motions. That strikes me as both counterintuitive and unjust. For that reason, I respectfully dissent from the majority opinion.