# Illinois Official Reports

## Appellate Court

---

### *People v. Zelenak*, 2014 IL App (3d) 120639

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE F. ZELENAK, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0639 |
| Filed<br>Modified upon denial<br>of rehearing | October 9, 2014<br><br>March 5, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court abused its discretion when it did not hold a fitness hearing and reverse the denial of defendant's motion to withdraw his guilty plea to aggravated kidnapping and aggravated criminal sexual assault and remand the cause with instructions to conduct a fitness hearing before further postplea proceedings; therefore, the trial court's judgment was reversed and the cause was remanded for a determination of defendant's fitness and further postplea proceedings. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 08-CF-131; the Hon. Howard C. Ryan, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Rikin Shah, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Brian Towne, State's Attorney, of Ottawa (Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.


**OPINION**

¶ 1    Defendant, George F. Zelenak, pled guilty to aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2008)) and aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2008)) and was sentenced to a total of 36 years' imprisonment. Defendant filed a motion to withdraw his plea, which the trial court denied. Defendant appeals, arguing that the court erred in conducting a hearing on defendant's motion to withdraw his guilty plea without ordering a fitness evaluation. We reverse and remand.

¶ 2                                    FACTS

¶ 3    In March 2008, defendant was charged by indictment with aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2008)), aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2008)), and criminal sexual assault (720 ILCS 5/12-13(a)(1) (West 2008)). On April 15, 2009, private attorney Joseph Navarro filed a motion for a fitness evaluation. The trial court granted the motion. Dr. Timothy Brown's evaluation concluded that defendant was fit, and the court found that defendant was fit to stand trial.

¶ 4    On December 3, 2009, defendant entered an open guilty plea to charges of aggravated kidnapping and aggravated criminal sexual assault in exchange for the dismissal of the criminal sexual assault charge. On January 15, 2010, the trial court sentenced defendant to two consecutive terms of 18 years' imprisonment.

¶ 5    On February 11, 2010, Navarro filed a motion to withdraw the guilty plea, arguing that defendant did not enter into the plea knowingly and voluntarily. On February 16, 2010, the trial court allowed Navarro to withdraw and appointed the public defender to represent defendant. The matter was continued several times until December 17, 2010, when the public defender reported that a Department of Corrections (DOC) psychiatrist informed him that defendant had difficulty "comprehending what [was] going on." As a result of defendant's incarceration, the State arranged for further psychiatric testing, and the case was continued. The court subsequently ordered Dr. Robert Chapman to conduct a fitness examination.

¶ 6    Chapman's report stated that defendant suffered from a mental condition that rendered him unable to understand the nature and purpose of the proceedings against him or assist in his defense. Chapman's report concluded that it was unlikely that defendant would be rendered fit in one year with treatment.

¶ 7    On September 15, 2011, the State advised the court that it had also received a fitness evaluation from Brown. The State stipulated to the evaluations prepared by Chapman and Brown. Brown's evaluation stated that defendant was not fit to stand trial, but could be returned to fitness in one year with the proper treatment. The State asked that the matter be set for a hearing on defendant's motion to withdraw his plea, and the public defender

suggested that part of the hearing focus on the issue of whether defendant was required to be fit in order to cooperate with counsel on the motion to withdraw the guilty plea.

¶ 8   On October 18, 2011, defendant filed an amended motion to withdraw his guilty plea. In addition to the earlier arguments, defendant contended that he did not receive effective assistance of counsel. On October 20, 2011, the trial court allowed the public defender to withdraw, and attorney Randolph Gordon entered an appearance on defendant's behalf.

¶ 9   On November 30, 2011, the State noted that there were two reports raising questions about defendant's fitness, and defendant had been seeing a psychologist or psychiatrist while incarcerated. The court granted a continuance to allow defendant to receive further treatment.

¶ 10   On July 27, 2012, the case was called for a hearing on defendant's amended motion to withdraw his guilty plea. Defendant testified that he did not understand the guilty plea proceedings and he pled guilty on his parents' instruction. On cross-examination, defendant stated that his parents told him that he could no longer live at their house if he did not plead guilty. Defendant's only memory of the plea was that before pleading guilty, Navarro advised defendant to sign a piece of paper that would allow defendant to "stay out for Christmas and New Year's." Defendant thought he was signing a document informing him that he needed to return for another court date.

¶ 11   Navarro testified that when he initially met with defendant, he observed some characteristics that might raise a fitness issue. However, after he was released on bond, defendant's mental health improved. Ultimately, Navarro thought defendant was fit to stand trial. On the day of the plea, Navarro believed defendant knowingly and voluntarily entered the plea, and Navarro did not notice any threats from defendant's parents.

¶ 12   The trial court found defendant received effective assistance of counsel, and defendant knowingly and voluntarily entered the guilty plea. The court denied defendant's motion to withdraw his plea, and defendant appealed.

¶ 13                                   ANALYSIS

¶ 14   Defendant argues that the trial court abused its discretion by failing to order a fitness hearing before proceeding to the hearing on defendant's motion to withdraw his guilty plea. We review the trial court's fitness determination for an abuse of discretion. *People v. Hanson*, 212 Ill. 2d 212 (2004). A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Tolefree*, 2011 IL App (1st) 100689.

¶ 15   A defendant is presumed fit absent circumstances raising a *bona fide* doubt of his fitness. *People v. Sanchez*, 169 Ill. 2d 472 (1996). If a *bona fide* doubt as to a defendant's fitness exists, the trial court is obligated to conduct a hearing to determine defendant's competency. *People v. McCallister*, 193 Ill. 2d 63 (2000). The defense, State, or court, "at any appropriate time before a plea is entered or before, during, or after trial," may raise the issue of a defendant's fitness. 725 ILCS 5/104-11(a) (West 2008). A number of factors may be considered in determining whether a *bona fide* doubt of fitness is raised, including: "a defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010). A defendant is unfit to stand

trial if, as a result of mental or physical condition, he is unable to understand the nature and purpose of the proceedings or to assist in his defense. *People v. Burt*, 205 Ill. 2d 28 (2001).

¶ 16 Supreme Court Rule 605(c) provides, in relevant part, that the trial court shall admonish defendant of certain rights after the entry of his guilty plea, including:

> "(5) that if the defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant with the preparation of the motions." Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001).

The provision by the supreme court for the appointment of counsel at the posttrial motion stage is indicative of the court's "continuing concern for the constitutional rights of defendants, even after they have lost the presumption of innocence." *People v. Roby*, 356 Ill. App. 3d 567, 572 (2005). If there is a *bona fide* question as to defendant's fitness, defendant cannot be presumed to have understood the Rule 605(c) admonishments. See *People v. McKay*, 282 Ill. App. 3d 108, 112 (1996) (court will not find that defendant waived his right to appeal because there was a *bona fide* question as to defendant's competence at the time he was admonished under Illinois Supreme Court Rules 604(d) (eff. Aug. 1, 1992) and 605). Defendant must be fit to assist counsel, who was appointed under Rule 605(c), with the posttrial proceedings. See *People v. Owens*, 139 Ill. 2d 351, 359-60 (1990).

¶ 17 Based on the foregoing principles, we conclude that the cause must be remanded for a fitness hearing. Our conclusion is supported by *Owens*, where our supreme court was faced with a posttrial fitness issue. There, the petitioner appealed from the denial of his postconviction petition and argued that the trial court erred in failing to hold a fitness hearing to determine whether he could meaningfully communicate with and assist his postconviction counsel. The supreme court held that the trial court was obligated to consider whether a postconviction petitioner was mentally competent to consult with his appointed counsel at the time his postconviction petition was considered. Absent such a consideration, the appointment of counsel was rendered " 'an empty formality,' " as the postconviction petitioner was unable to communicate with counsel in a rational manner. *Owens*, 139 Ill. 2d at 360 (quoting *People v. Garrison*, 43 Ill. 2d 121, 123 (1969)). The *Owens* case was remanded to the trial court for a determination of whether there was a *bona fide* doubt about the petitioner's mental ability to communicate with his postconviction counsel. If such a doubt existed and a psychiatric examination and evidentiary hearing disclosed that the petitioner was incompetent to consult with his postconviction counsel, the petitioner was to be remanded to the DOC until he was rendered fit to consult with counsel in the presentation of his postconviction petition. *Owens*, 139 Ill. 2d at 366.

¶ 18 The instant case, unlike *Owens*, is before this court on direct appeal from the denial of defendant's motion to withdraw his guilty plea. However, the principles underlying the remand in *Owens* would apply with at least as much force and effect. As a direct attack on the underlying conviction, defendant must be able to assist his counsel to very nearly the same degree as was necessary at the time that his guilt or innocence was determined. *Roby*, 356 Ill. App. 3d at 573-74.

¶ 19 In *Roby*, the court was faced with a similar fitness issue that arose during postplea proceedings. After a postplea psychiatric evaluation reported that defendant was unfit, the trial court conducted a hearing on defendant's motion to withdraw his guilty plea. Despite the court's knowledge of the report, defendant's guilty plea counsel was allowed to testify about

- 4 -

his interactions with defendant prior to and at the time of the entry of the plea. As a result of defendant's unfitness, the reviewing court concluded that defendant could not have made a valid waiver of the attorney-client privilege and was unable to assist postplea counsel. The *Roby* court vacated the denial of defendant's postplea motion and remanded the cause with directions for the trial court to ascertain whether defendant had become competent to assist appointed counsel, and, if so, to conduct new proceedings on the postplea motion. *Roby*, 356 Ill. App. 3d at 574.

¶ 20    The State argues that *Roby* is inapplicable to the present case because, in *Roby*, defense counsel requested a fitness hearing and the trial court conducted the "functional equivalent of a fitness hearing." *Roby*, 356 Ill. App. 3d at 572. Although defense counsel in the instant case did not request a fitness hearing, defendant's DOC mental health treatment and evaluations concluding that he was unfit raised a *bona fide* doubt of defendant's fitness. After entry of the guilty plea, defendant's fitness was questioned, and two mental health evaluations were conducted. The two evaluations concluded that defendant was unfit, and the court continued the case to allow defendant to continue receiving mental health treatment. It did not, however, set the matter for a fitness hearing. From the record, it seems that the public defender intended to use the hearing on the motion to withdraw the guilty plea as a hybrid fitness hearing, but defendant's postplea fitness was not made a part of the July 2012 hearing. Given this record, the trial court had a duty to *sua sponte* order a fitness hearing and further investigate the issue of defendant's fitness before it conducted a hearing on defendant's postplea motion. *McCallister*, 193 Ill. 2d at 110-11 (the court has a duty to order a fitness hearing *sua sponte* once facts are presented that raise a *bona fide* doubt of a defendant's fitness because it is a violation of due process to convict an unfit defendant (citing *People v. Murphy*, 72 Ill. 2d 421, 430 (1978) (fundamental constitutional nature of the fitness requirement creates a duty for the trial court to hold a fitness hearing once a *bona fide* doubt of a defendant's fitness is raised))). Like *Roby*, the psychiatric evaluations put the court and parties on notice that defendant was likely unfit. Despite the reports, the trial court conducted a hearing on defendant's motion and permitted defendant and counsel to testify at a time when defendant's fitness was uncertain. As a result, the trial court abused its discretion when it did not hold a fitness hearing before it denied defendant's motion to withdraw his guilty plea.

¶ 21    The dissent contends that *Owens* lowered the fitness requirements for posttrial proceedings. While we agree that the supreme court noted in *Owens* that a greater degree of incompetence must be shown in a postconviction proceeding as compared with fitness issues occurring prior to trial, we emphasize that the instant case is before this court on direct appeal. At this stage, in contrast to a postconviction proceeding, a defendant has a constitutional right to counsel. *People v. Hughes*, 315 Ill. App. 3d 86, 95 (2000); U.S. Const., amends. VI, XIV; but see *People v. Waldrop*, 353 Ill. App. 3d 244, 249 (2004) (postconviction petitioner has no constitutional right to the assistance of counsel and the right is wholly statutory). To effectively benefit from this right, defendant must be able to communicate with counsel in a rational manner. See *Owens*, 139 Ill. 2d at 360. In light of this crucial distinction and the fitness concerns apparent in the record, the trial court needed to verify that defendant was mentally competent to assist counsel with the posttrial matters before proceeding on defendant's motion to withdraw the guilty plea. Thus, the court erred

when it conducted a hearing on defendant's motion based on the presumption that defendant had received the necessary mental health treatment and was fit.

¶ 22   Due to the procedural posture of this case and parallels with the *Owens* and *Roby* decisions, we reverse the order denying defendant's motion to withdraw the guilty plea and remand the cause with instruction to conduct a fitness hearing before conducting further postplea proceedings.

¶ 23                                          CONCLUSION

¶ 24   The judgment of the circuit court of La Salle County is reversed, and the cause is remanded for a fitness determination and further postplea proceedings.

¶ 25   Reversed and remanded.

¶ 26   JUSTICE SCHMIDT, dissenting.

¶ 27   To be clear, the defendant does not argue that the trial court erred in denying his motion to withdraw his guilty plea. As the State correctly notes, a defendant does not have an automatic right to withdraw a plea of guilty. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). "Rather, defendant must show a manifest injustice under the facts involved. [Citation.] The decision of the trial court will not be disturbed unless the plea was entered through a misapprehension of the facts or of the law, or if there is doubt as to the guilt of the accused and justice would be better served by conducting a trial. [Citation.] Where the defendant has claimed a misapprehension of the facts or of the law, the misapprehension must be shown by the defendant. [Citation.]" *Id.*

¶ 28   Nowhere in defendant's arguments to this court can I find an assertion that the trial court improperly denied his motion to withdraw his guilty plea due to his misapprehension of the law or the facts. Nor can I find an argument made by defendant that justice would be better served by conducting a trial. This is not surprising given the factual basis offered below of defendant's guilt. The State proffered that the victim would positively identify the defendant as the person who had beaten, kidnapped and sexually assaulted her. The State also indicated that the victim made a point of preserving deoxyribonucleic acid (DNA) evidence, which would prove defendant's DNA was both in and on the victim after the attack. Moreover, the victim's blood was found inside defendant's vehicle. It is not surprising defendant fails to argue that the trial court abused its discretion when denying his motion; it is hard to contemplate exactly how the defendant could satisfy the factors discussed in *Delvillar* entitling him to withdraw his guilty plea.

¶ 29   Nevertheless, the majority concludes that the trial court erred by conducting the hearing on defendant's motion to withdraw his guilty plea without first holding a fitness hearing. The only statutory support for this conclusion cited by the majority is section 104-11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-11 (West 2008)).

¶ 30   The majority's reliance on *McCallister* is misplaced. Citing to *McCallister*, the majority concludes that "the trial court had a duty to *sua sponte* order a fitness hearing" in this matter "because it is a violation of due process to convict an unfit defendant." *Supra* ¶ 20. Defendant had already been convicted. This motion was not about convicting defendant but, rather, "unconvicting" defendant. No one here, including defendant, has raised an issue

regarding defendant's fitness at the time he was convicted. The entire discussion of fitness in *McCallister* involved "the accused's fitness to stand trial or be sentenced." *McCallister*, 193 Ill. 2d at 111. Moreover, the *McCallister* court held that the trial court did not err by failing to "*sua sponte* inquire into defendant's fitness following" testimony that a nurse at the county jail stated defendant had not been taking various medications. *Id*. at 112.

¶ 31   The majority relies heavily upon *People v. Owens* for the notion that the trial court here had a duty to *sua sponte* conduct a fitness hearing where none had been requested. *Owens* does not support that notion. The majority concludes, based on its review of the record, that "the psychiatric evaluations put the court and parties on notice that defendant was likely unfit." *Supra* ¶ 20. I disagree. The reports that the majority apparently refers to are those in February of 2010 and reports from 2011. Over the course of 2½ years, defendant was evaluated and treated while in the DOC. Also, during that time, the public defender was allowed to withdraw and attorney Randolph Gordon entered an appearance on defendant's behalf. The hearing on defendant's motion to withdraw his guilty plea was continued numerous times over that period while defendant was being treated. *Supra* ¶¶ 5-10. It is clear from the record that neither defense counsel, the State nor the court wanted this hearing to take place until defendant was fit. Finally, on July 27, 2012, the hearing took place. The defendant was present with counsel who made no request for a fitness hearing and who raised no issue about defendant's ability to cooperate with him, despite the fact of having done so in the past. To the contrary, prior to the hearing on the motion to withdraw the guilty plea, Gordon filed a Rule 604(d) certificate confirming that he had consulted with defendant "in person on a number of occasions" regarding the motion to withdraw the plea. There is nothing in this record to suggest that defendant was unfit on July 27, 2012.

¶ 32   In *Owens*, the trial court denied a defendant's request for a fitness hearing before denying his posttrial motion. The trial court felt that it had no authority to conduct such a hearing. The supreme court said it did and remanded for that hearing. In doing so, the supreme court also noted that "a greater degree of incompetence must be shown to demonstrate that a petitioner is not competent to participate in post-conviction proceedings than is required to show that a defendant is not competent to stand trial." *Owens*, 139 Ill. 2d at 363. "A post-conviction petitioner, on the other hand, will be considered unfit only if he demonstrates that he, because of a mental condition, is unable to communicate with his post-conviction counsel in the manner contemplated by section 122-4 of the Code of Criminal Procedure and Supreme Court Rule 651." *Id.* There is nothing in the record to suggest that defendant was unfit at the time of the hearing on his motion to withdraw his guilty plea. There was no request by defendant, his counsel, or the State for a fitness hearing. There is nothing in defendant's testimony at the hearing that would suggest that he was unfit to communicate and participate. In fact, his testimony is exactly what one would expect under the circumstances.

¶ 33   In this postconviction proceeding, it is clear from the record that everyone involved was satisfied that defendant was fit. I believe the only thing that could reasonably be gleaned from this record is that defendant previously had fitness issues. He was treated over a two-year period and the hearing was held only when everyone was satisfied that he was fit. There is nothing in the record to suggest that he was not fit to participate in the postconviction proceeding.

¶ 34   I, therefore, respectfully dissent.